# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

            Plaintiff,

vs.                                                                                             No. CR 18-3890 JB

JOSE RAMIREZ,

            Defendant.

## <u>MEMORANDUM OPINON AND ORDER</u>

**THIS MATTER** comes before the Court on:  (i) United States' Notice of Intent to Introduce Evidence as *Res Gestae* and/or Prior Bad Acts Pursuant to Federal Rule of Evidence 404(b), filed June 19, 2025 (Doc. 199)("Notice I");  and (ii) United States' Second Notice of Intent to Introduce *Res Gestae* Evidence, or, in the Alternative, Pursuant to Federal Rule of Evidence 404(b), filed July 11, 2025 (Doc. 232)("Notice II").  The Court holds a hearing on September 30, 2025.  <u>See</u> Clerk's Minutes at 1, filed September 30, 2025 (Doc. 279).  The primary issues are: (i) whether Plaintiff United States of America can introduce evidence that, on April 28, 2017, Valencia County Sheriff's Deputies encountered and arrested Defendant Jose Ramirez in a motor vehicle that Megan Bicondova, a co-Defendant to the Fourth Superseding Indictment, filed August 12, 2025 (Doc. 244), was driving; (ii) whether the United States can introduce evidence that Rader Awning & Upholstery, a business that John Doe owns and operates, previously employed Defendant Jose Ramirez, and Doe fired J. Ramirez for theft in or about 2013; (iii) whether the United States can introduce evidence that J. Ramirez received prescription medication from Southern New Mexico Correctional Facility upon his release on July 2, 2018, where the pill bottle was found at the crime scene; (iv) whether the United States can introduce evidence that, following J. Ramirez' release from Southern New Mexico Correction Facility on July 2, 2018, J. Ramirez commenced parole

under the supervision of New Mexico Probation and Parole Officer Rebekah Wells, to whom J.
Ramirez provided his address and telephone number; (v) whether the United States can introduce
evidence that, as a condition of his parole, J. Ramirez had to wear an ankle GPS monitor; (vi)
whether the United States can introduce evidence that, at some point during his supervision in July
2018, J. Ramirez left a voicemail for Wells indicating that he would be out past curfew, and stating
that he is at a bus station at the intersection of Rio Bravo and Second St. in Albuquerque, New
Mexico at the time of the call; and (vii) whether the United States can introduce evidence that, on
July 26, 2018, J. Ramirez' GPS ankle monitor transmitted a tamper notice and that New Mexico
Probation and Parole recovered the device from J. Ramirez' bedroom at 10301 Jenaro in
Albuquerque that same morning, at which point J. Ramirez was deemed an absconder, and a State
warrant was issued for his arrest.  The Court concludes that:  (i) the United States can introduce
evidence of the encounter between the Valencia County Sheriff's Deputies, and J. Ramirez and
Bicondova in a car, including referring to it as a traffic stop wherein Bicondova did not stop until
the car was disabled, but cannot refer to it as a high-speed car chase, and cannot introduce any
evidence of the arrest that resulted from the interaction; (ii) the United States can introduce evidence
that Rader Awning & Upholstery, a business that Doe owns and operates, previously employed J.
Ramirez, and fired J. Ramirez in or about 2013, but cannot introduce the fact that the firing resulted
from theft; (iii) the United States can introduce evidence that J. Ramirez received prescription
medication on July 2, 2018, and that this medication is at the crime scene, but cannot disclose who
prescribed the medication; (iv) the United States can call Wells, but cannot introduce her as a parole
officer, and cannot introduce the fact of J. Ramirez' prior incarceration at the Southern New Mexico
Correctional Facility or the fact that J. Ramirez was on parole; (v) the United States cannot reference
J. Ramirez' ankle monitor or the monitoring of J. Ramirez by Wells on behalf of the State; (vi)

without referencing J. Ramirez' supervision, the United States can introduce the voicemail that J. Ramirez left Wells where he stated that he is at a bus station at the intersection of Rio Bravo and Second St. at the time of the call, but cannot reference J. Ramirez' curfew; and (vii) the United States cannot introduce evidence that, on July 26, 2018 J. Ramirez' GPS ankle monitor transmitted a tamper notice and that New Mexico Probation and Parole recovered the device from J. Ramirez' bedroom at 10301 Jenaro that same morning, at which point J. Ramirez was deemed an absconder, and a State warrant was issued for his arrest. The Court therefore grants in part and denies in part the requests in Notice I, and in Notice II.

## **FACTUAL BACKGROUND**

The Court takes its facts primarily from the Criminal Complaint, filed July 30, 2018 (Doc. 1)("Complaint"). The Court also draws from the facts in Notice I and Notice II. The Court relies on these factual accounts for background purposes only, as J. Ramirez is presumed innocent until proven guilty at trial.

On July 26, 2018, at approximately 6:00 a.m., two masked men, Jose Ramirez and co-defendant Ian Small, kidnapped a sixty-nine year-old resident of Placitas, New Mexico, John Doe, in his driveway. See Notice I at 1. Small has pled guilty to conspiracy to commit kidnapping and carjacking, and been sentenced for his role in the kidnapping. See Notice I at 1. On or about July 23, 2018, before initiating the kidnapping, J. Ramirez arranges a meeting between Megan Bicondova, a former acquaintance, and Small at the Talin Market in Albuquerque where J. Ramirez seeks to recruit Bicondova as a driver for an upcoming "job." Notice I at 3. J. Ramirez previously had been involved in a car chase from State police in 2017, where Bicondova was the driver, and both Bicondova and J. Ramirez subsequently were arrested. See Notice I at 2. After Bicondova agrees to participate in the job, on or about July 26, 2018, J. Ramirez cuts off an ankle monitor that

he is wearing as a condition of his parole with the New Mexico Corrections Department following release from State detention on an unrelated conviction.  See Notice II at 3.  J. Ramirez then steals a pickup truck from his sister, which Bicondova uses to drive J. Ramirez and Small to Doe's house in Placitas, before Bicondova drives to a pre-established rendezvous point, a gas station in Bernalillo, where she waits for J. Ramirez and Small to arrive.  See Notice I at 3.  At around 6:00 a.m., when Doe exits his home, J. Ramirez and Small approach Doe, and a struggle ensues.  See Complaint ¶ 4, at 2. During the struggle, Doe realizes that Small is armed with a semi-automatic pistol, and Doe thereafter complies with J. Ramirez and Small.  See Complaint ¶ 4, at 2.  J. Ramirez and Small are able to force Doe into the middle seat of Doe's 2004 Ford Ranger.  See Complaint ¶ 4, at 2.  J. Ramirez and Small drive away, and begin talking to Doe, at which point it becomes apparent that at least one of the men is familiar with Doe.  See Complaint ¶ 5, at 3.  J. Ramirez and Small call Doe by his name, and they know that Doe has two safes in his house.  See Complaint ¶ 5, at 3.  In fact,  J. Ramirez previously had worked for Doe, first doing odd jobs, and then as an employee of Doe's company, Rader Awnings & Upholstery.  See Notice I at 1-2.  Doe fired J. Ramirez for theft in or about 2013.  See Notice I at 2.

During the drive, J. Ramirez and Small demand that Doe pay them $50,000.00.  See Complaint ¶ 5, at 3.  Doe convinces  J. Ramirez and  Small that he does not have $50,000.00, but can come up with $10,000.00.  See Complaint ¶ 5, at 3.  J. Ramirez and Small remove $600.00 from Doe's wallet and a blank check connected to one of Doe's personal accounts at U.S. Bank.  See Complaint ¶ 5, at 3; Notice I at 4.  J. Ramirez and Small then drive Doe to a remote location on the west side of Albuquerque and place Doe in a shed-like structure.  See Notice I at 5.  Once at the secondary location, J. Ramirez and Small have Doe call his daughter, and provide Doe with instructions on where to wire transfer $9,400.00 to a specific account at a bank in Guadalajara,

Mexico.  See Complaint ¶ 8, at 4.  The information that J. Ramirez and Small provide to Doe is insufficient to complete the transfer.  See Complaint ¶ 8, at 4.  During one call, Doe's daughter speaks with one of the Defendants, where the Defendant states that "$30,000 can be deposited in that account no problem" and questions why Doe's daughter is having problems sending $10,000.00. See Complaint ¶ 8, at 4.  Over the span of these interactions, Doe's daughter is able to record four calls between her, Doe, J. Ramirez, and Small.  See Complaint ¶ 8, at 4.

Several hours after the calls are made to Doe's daughter, the FBI establishes that the calls come from a cellular telephone belonging to Ramirez.  See Notice I at 5.  The FBI then learned that J. Ramirez is currently on State probation, so they contact his probation officer, Wells on July 26, 2018.  See Notice I at 6.  Wells informs the FBI that J. Ramirez must wear a GPS ankle-monitoring device as a condition of his probation, and that J. Ramirez has cut off the device sometime in the evening of July 25, 2018.  See Complaint ¶ 12, at 5.  Parole officers recover the device at the J. Ramirez' residence on the morning of July 26, 2018, and issue an arrest warrant for probation violations.  See Complaint ¶ 12, at 5.

J. Ramirez and Small keep Doe in the shed-like structure until that evening, during which time Doe obtains multiple beatings.  See Notice I at 5.  At approximately 10:45 p.m. on July 26, 2018, Doe is dropped off near the train tracks in Rio Bravo SW and 2nd Street in Albuquerque. See Notice I at 6.  Doe walks to a nearby gas station, at which point 911 is called, and both Bernalillo County Sheriff's Office and paramedics respond.  See Notice I at 6.  During the FBI's subsequent investigation of the kidnapping, the FBI recover from the secondary location where Doe is held captive a backpack containing two prescription bottles in Jose Ramirez' name.  See Notice II at 2.

J. Ramirez remains in Albuquerque for several days after the kidnapping, arriving at the home of his former romantic partner, Lorena Ramirez, on the morning of July 27, 2018.  See Notice

I at 6.  The following day, L. Ramirez drives J. Ramirez to the Ontario International Airport in Ontario, California, and drops him off.  <u>See</u> Notice I at 6-7.  Before leaving for California, J. Ramirez gives L. Ramirez the blank check that J. Ramirez took from Doe's wallet.  <u>See</u> Notice I at 7.  J. Ramirez has filled in the check with the names Edward Crespin and L. Ramirez, made out for $1,500.00, with Doe's forged signature.  <u>See</u> Notice I at 7.  J. Ramirez remains in California for nearly seven years, living under the false names of Eduardo Carrasco and Reymundo Vasquez, and, after being arrested in 2025 for possession of narcotics, police discovered that J. Ramirez is the same J. Ramirez wanted in New Mexico. <u>See</u> Notice I at 7.

## PROCEDURAL BACKGROUND

The United States files Notice I on June 19, 2025.  <u>See</u> Notice I at 12.  The United States files Notice II on July 11, 2025.  <u>See</u> Notice II at 14.  Notice I states that the United States intends to introduce evidence that: (i) on April 28, 2017, Valencia County Sheriff's Deputies encounter and arrest J. Ramirez in a motor vehicle that Bicondova is driving; and (ii) Rader Awning, a business that Doe owns and operates, previously employed J. Ramirez, and Doe fired J. Ramirez for theft in or about 2013.  <u>See</u> Notice I at 1.  Notice II states that the United States intends to introduce evidence that: Southern New Mexico Correctional Facility ("Southern NM") released Ramirez on July 2, 2018.  Upon his release, Southern NM issues J. Ramirez two separate prescriptions medications -- Mirtazapine and Paroxetine. Following his July 2, 2018 release, J. Ramirez commences parole under the supervision of New Mexico Probation Officer Rebekah Wells.  As his parole terms require, J. Ramirez provides Wells with his address --10301 Jenaro St. SW -- and telephone number -- 505-582-4555.  As a parole condition, J. Ramirez has to wear an ankle GPS monitor. At some point during his supervision in July 2018, J. Ramirez leaves a voicemail for Wells indicating that he would be out past curfew, and states that he is at a bus station at the intersection of Rio Bravo

and Second St. at the time of the call.  J. Ramirez calls from 505-582-4555 and indicates that Wells can reach him at that number.  On July 26, 2018, at approximately 3:22 a.m., Ramirez' GPS ankle monitor transmits a tamper notice, indicating the device has been stretched or cut off.  New Mexico Probation recovers the device from J. Ramirez' bedroom at 10301 Jenaro that same morning.  J. Ramirez was deemed an absconder, and a State warrant was issued for his arrest.  See Notice II at 4.  The Court held a hearing on September 30, 2025.  See Clerk's Minutes, at 1, filed September 30, 2025 (Doc. 279).  J. Ramirez has not filed a response, but raises objections at the hearing.  The Court discusses each category of proffered evidence in turn.

     1.     **Notice I.**

In Notice I, the United States sets forth several incidents that it argues the Court should admit pursuant to rule 404(b) of the Federal Rules of Evidence.  See Notice I at 1.  First, the United States provides notice to the Court of its intent to introduce evidence of J. Ramirez' arrest in a motor vehicle that Bicondova is driving on April 28, 2017.  See Notice I at 1.  Second, the United States provides notice to the Court of its intent to introduce evidence of J. Ramirez' employment at Rader Awning, Doe's company, and his subsequent firing for theft.  See Notice I at 1.  The United States argues that the fact of J. Ramirez' firing is also admissible as res gestae.  See Notice I at 8.

     a.     **The United States' Intent to Introduce Evidence of J. Ramirez' Arrest in 2017.**

The United States contends that evidence of Valencia County Sheriff's Deputies arrest of J. Ramirez in a car that Bicondova drives on April 28, 2017, is admissible under rule 404(b).  See Notice I at 10.  The United States argues that evidence of this arrest goes directly to identity, a proper purpose under rule 404(b), because J. Ramirez lies to the FBI during interrogation relating to this crime by telling the FBI that he does not know Bicondova.  See Notice I at 10-11.  The United States contends that this lie is necessary, because J. Ramirez does not want the FBI to link

- 7 -

him to Bicondova, and that the fact of his lie despite his relationship with Bicondova provides "compelling circumstantial proof of his participation in the charged offenses."  Notice I at 11.  The United States argues that the evidence's probative value outweighs any risk of unfair prejudice, because "the identity of the kidnapper is what this case is all about," and a careful limiting instruction could cure any residual prejudice.  Notice I at 11.

> ### b.    The United States' Intent to Introduce Evidence of J. Ramirez' Firing for Theft from Doe's Business.

The United States first contends that evidence of Doe's firing of J. Ramirez for theft is admissible as res gestae evidence.  The United States states that this evidence is proper background evidence, because it provides direct evidence on the following relevant facts: (i) J. Ramirez knows Doe; (ii) the circumstances surrounding how the two men know each other; (iii) how J. Ramirez gains general familiarity with Doe's finances; (iv) how J. Ramirez knows where Doe lives; (v) how J. Ramirez gains familiarity with Doe's pattern of life, including what time he leaves for work in the morning; and (vi) why J. Ramirez holds a grudge against Doe such that he is willing to kidnap Doe.  See Notice I at 8.  The United States argues that the story of the crime charged is incomplete without this evidence and that, in the absence of this evidence, the jury could be left to conclude that this crime is random.  See Notice I at 8.

In the alternative, the United States argues that this evidence is admissible under rule 404(b).  The United States contends that this evidence is admissible to prove that J. Ramirez has knowledge of Doe, has the motive to kidnap Doe, and to prove the kidnapper's identity.  See Notice I at 9-10.  The United States argues that this evidence is directly relevant to the case's central issue -- the kidnapper's identity -- because the circumstances surrounding J. Ramirez' termination from Doe's company have a strong tendency to make the fact that J. Ramirez kidnaps Doe more probable than it would be otherwise without the evidence.  See Notice I at 10.  Additionally, the evidence will

prove that J. Ramirez lies to the FBI when he states that he respects Doe. <u>See</u> Notice I at 10. The United States argues that the evidence's probative value outweighs any risk of unfair prejudice, because J. Ramirez' "knowledge and lack of mistake are proper purposes for this evidence, and because of the availability of a limiting instruction." Notice I at 10.

2.    <u>**Notice II**</u>.

In Notice II, the United States sets forth several incidents that it argues that the Court should admit as res gestae or, in the alternative, pursuant to rule 404(b). <u>See</u> Notice II at 1. First, the United States provides notice to the Court of its intent to introduce evidence of J. Ramirez' prescription medication prescribed upon his release from Southern NM on July 2, 2018. <u>See</u> Notice II at 4. Second, the United States provides notice to the Court of its intent to introduce evidence of J. Ramirez' parole under Wells, the provision of J. Ramirez' address and telephone number to Wells, and the requirement that J. Ramirez wear a GPS ankle monitor. <u>See</u> Notice II at 4. Third, the United States provides notice to the Court of its intent to introduce evidence of a voicemail that J. Ramirez leaves for Wells in July 2018. <u>See</u> Notice II at 4. Finally, the United States provides notice to the Court of its intent to introduce evidence that on July 26, 2018, J. Ramirez' GPS ankle monitor transmits a tamper notice, and that NM Probation then recovers the device from J. Ramirez' residence the following morning, at which point J. Ramirez is deemed an absconder, and a State warrant is issued for his arrest. <u>See</u> Notice II at 4.

a.    <u>**J. Ramirez' Prescription Medication**</u>.

The United States argues that evidence of J. Ramirez' prescription medication properly is admissible as res gestae evidence because these prescription medications link J. Ramirez to the crime scene, and the fact that the medication was prescribed in June 2018, and J. Ramirez was released on July 2, 2018, refutes any suggestion that the medication changed hands. <u>See</u> Notice II

at 5.  The United States contends that this evidence is not unfairly prejudicial, given that the evidence does not tend to make a conviction more likely because it provokes an emotional or incendiary response from the jury.  See Notice II at 8.  The United States concludes that the probative value of the evidence outweighs any prejudice in the case.  See Notice II at 8.

In the alternative, the United States argues that this evidence is properly admissible under rule 404(b).  The United States contends that this evidence is admissible to show the offender's identity, a proper purpose, because the same prescription bottles are at the crime scene just weeks after the crime occurred.  See Notice II at 9.  The United States states the Court can address any prejudice that results from this evidence's introduction through a cautionary instruction. See Notice II at 10.

### b.     **J. Ramirez' Parole Supervision and GPS Ankle Monitor.**

The United States seeks to admit evidence of J. Ramirez' State supervision, his telephone number and address provided to Wells, as well as the fact that he is wearing a GPS ankle monitor under a theory of res gestae evidence.  See Notice II at 6.  The United States argues that this evidence is inextricably intertwined with the charged offenses, because the United States contends that it cannot "cohesively explain the events without presenting evidence that [J. Ramirez] cut off his ankle monitor just hours before the kidnapping." Notice II at 6.  The United States argues that this evidence is proper background evidence, because it is "probative of [J. Ramirez'] guilt and has causal, temporal, and spatial connections with the charged offenses."  Notice I at 6.  The United States contends that this evidence is not unfairly prejudicial, given that the evidence does not tend to make a conviction more likely because it provokes an emotional or incendiary response from the jury. See Notice II at 8.  The United States concludes that the evidence's probative value outweighs any prejudice in the case.  See Notice II at 8.

In the alternative, the United States argues that the Court should admit the evidence of J. Ramirez' supervision and removal of his ankle monitor under rule 404(b), because it is "critical evidence of opportunity, intent, preparation, and plan," given that cutting off the ankle monitor was J. Ramirez' last act before meeting with his co-conspirators to carry out the kidnapping. Notice II at 10. The United States reiterates its arguments that the evidence is not impermissibly prejudicial, because it will not evoke an emotional response from the jury or otherwise adversely affect the jury's attitude towards J. Ramirez. See Notice II at 12.

### c. **Voicemail That J. Ramirez Leaves for Wells.**

The United States argues that the voicemail that J. Ramirez leaves for Wells on July 23, 2018, is appropriate res gestae evidence, for three reasons. First, the United States contends that the telephone call is made from 505-582-4555, which demonstrates J. Ramirez' use of the same telephone number that later made the ransom calls. See Notice II at 6. Second, the United States argues that the telephone call captures J. Ramirez' tone and inflection, which matches the tone and inflection from the ransom call where J. Ramirez' voice is audible. See Notice II at 6. Finally, the United States asserts that the telephone call evidences a familiarity with the area of Rio Bravo and Second St., which is the same area where Doe is left following the kidnapping. See Notice II at 6. The United States concludes that, "[u]ltimately, the evidence will provide important context regarding J. Ramirez' phone number, tone of voice, and familiarity with an area relevant to the case." Notice II at 7. The United States also argues that this evidence is admissible under rule 404(b), because the voicemail is evidence of both identity and opportunity. See Notice II at 11. The United States argues that the evidence proves identity both because J. Ramirez uses the same telephone number to call Wells on the evening of July 23, 2018, that the ransom caller uses the morning of July 26, 2018, and because the similarities between the voice on the voicemail and the

voice on the ransom call recording are noticeable.  See Notice II at 11.  Additionally, the United States contends that the evidence demonstrates opportunity, because J. Ramirez calls from the same area where he later drops off Doe after the conclusion of the kidnapping.  See Notice II at 11.  The United States argues that this evidence is not unduly prejudicial, once again restating its argument that this evidence will not evoke an emotional response from the jury or otherwise adversely affect the jury's attitude towards J. Ramirez.  See Notice II at 13.  The United States also argues that the voicemail even "can be construed positively because it shows [J. Ramirez'] efforts to comply with his [parole] conditions."  Notice II at 13.

> **d.    J. Ramirez' Ankle Monitor Transmission of a Tamper Notice and Subsequent State Warrant for Arrest as an Absconder.**

The United States does not provide independent arguments for the admission of the evidence of J. Ramirez' ankle monitor tamper notice and subsequent State warrant for arrest as an absconder.  In the absence of clear argumentation, the Court assumes that the United States subsumes this evidence under the arguments that the United States makes for the admission of the fact of J. Ramirez' supervision and requirement that he wear an ankle monitor.  These arguments are summarized above in section b, J. Ramirez' Parole Supervision and GPS Ankle Monitor.

> **3.    The Hearings.**

The Court held multiple hearings where the Court and the parties discussed the evidence in both Notice I and Notice II.  The Court gave initial rulings at a hearing held on September 9, 2025.  See Clerk's Minutes at 1, filed September 9, 2025 (Doc. 262)("Notice Hearing").  The Court then reconsidered those rulings at a Scheduling Conference held on September 30, 2025.  See Clerk's Minutes at 1, filed September 30, 2025 ("Scheduling Conference").  Finally, the Court revised one of the rulings at a pretrial conference on October 3, 2025.  See Clerk's Minutes at 1, filed October 3, 2025 (Doc. 300)("Pretrial Conference"). The parties then proceed to trial on the basis of the

rulings made at these hearings on October 6, 2025.  On October 12, 2025 a mistrial is declared.  See Trial Day 6 Tr. at 11:21-23 (Court).  In a subsequent hearing on October 27, 2025, held on a motion to continue and a motion to stay relating to the second trial, the Court revises one of its prior res gestae rulings.  See Clerk's Minutes at 1, filed October 27, 2025 (Doc. 309)("Motions to Continue and Stay Hearing").

### a.    Notice Hearing.

The Court holds a hearing on September 9, 2025.  Clerk's Minutes at 1, filed September 30, 2025 (Doc. 279).  The first evidence that the parties discuss is J. Ramirez' firing for theft.  See Notice Hearing Tr. at  36:1-2 (Robert).  J. Ramirez objects to the characterization of this evidence as res gestae, because it occurs years before the kidnapping.  See Notice Hearing Tr. at 36:2-8 (Robert).  Although the Court acknowledges the gap in time between the firing -- which occurs in 2013 -- and the kidnapping -- which occurs in 2018 -- the Court indicates that it is inclined to admit the evidence, because it goes to motive, and "res gestae is a part of that."  Notice Hearing Tr. at 36:9-23 (Court).  The discussion then turns to the admission of evidence of J. Ramirez' arrest in 2017 while in a car that Bicondova drives.  See Notice Hearing Tr. at 37:3-12 (The Court, Burkhead).  J. Ramirez argues that this evidence is inadmissible, because it is highly more prejudicial than probative.  See Notice Hearing Tr. at 37:13-14 (Robert).  J. Ramirez states that, if the only purpose of this evidence is to establish that J. Ramirez and Bicondova knew each other, there are other ways of doing that besides introducing a conviction that J. Ramirez sustains in 2017.  See Notice Hearing Tr. at 37:15-18 (Robert).  The United States responds that there are two reasons why this evidence is relevant.  See Notice Hearing Tr. at 38:3-6 (Burkhead).  First, according to the United States, the evidence shows that when FBI Agent Dan Fondse interviews J. Ramirez in January, 2025, in connection to the kidnapping, J. Ramirez lies and says that he does not know

Bicondova because J. Ramirez wants to distance himself from the person with whom he committed the kidnapping. See Notice Hearing Tr. at 38:7-15 (Burkhead). The United States also argues that this evidence is relevant, because it offers support for evidence that the United States plans to introduce that J. Ramirez met with Bicondova before the kidnapping to recruit Bicondova as a driver for the crime. See Notice Hearing Tr. at 39:1-11 (Burkhead). The United States argues that this prior instance where Bicondova is willing to drive "heroically, from the police" demonstrates support for its contention that J. Ramirez then later attempts to recruit Bicondova as the driver for the kidnapping. Notice Hearing Tr. at 39:1-11 (Burkhead). J. Ramirez responds that this evidence is "too attenuated to justify the risk of the prejudice." Notice Hearing Tr. at 39:13-14 (Robert). The Court states that, although it may be stretching res gestae a little bit, for present purposes, the parties should plan on the evidence coming in to the trial, because it certainly is relevant. See Notice Hearing Tr. at 40:1-7 (Court). The Court limits the evidence, however, and states that the police officer can discuss the incident, but cannot mention the arrest or conviction that stem from the encounter. See Notice Hearing Tr. at 51:1-3 (Court). The United States then argues for the admission of the prescription pill bottles found at one of the crime scenes that are prescribed to J. Ramirez at Southern New Mexico, along with the prescription record from Southern New Mexico, arguing that the evidence is clearly highly relevant. See Notice Hearing Tr. at 41:1-8 (Burkhead). J. Ramirez objects to this evidence, arguing that the United States is stretching the evidence's probative value and that the prejudicial impact substantially outweighs any probative value. See Notice Hearing Tr. at 41:14-25 (Robert). J. Ramirez states that going beyond the admission of the two pill bottles to tell the jury that J. Ramirez had just gotten out of prison is a "step too far." Notice Hearing Tr. at 42:1-2 (Robert). The Court rules that the pill bottles are admissible, but any connection linking it to a corrections pharmacy is not necessary and overly prejudicial. See Notice

Hearing Tr. at 43:6-8 (Court). The United States then turns to the voicemail that J. Ramirez left for Wells and argues that this voicemail is relevant, because J. Ramirez identifies himself in the call, and this voicemail is therefore a known voice recording of J. Ramirez for comparison to the unidentified voice in the ransom calls. See Notice Hearing Tr. at 44:1-5 (Burkhead). The United States acknowledges that the voicemail is left for a probation officer and that it will be clear from the context what is happening. See Notice Hearing Tr. at 44:5-8 (Burkhead). The Court discusses the need to doctor the transcript to avoid mention of J. Ramirez' probation. See Notice Hearing Tr. at 46:1-9 (Court). Later, after the United States plays the voicemail for the Court, the Court concludes that the voicemail is admitted, but that the probation officer, Rebekah Wells, is not allowed to testify. See Notice Hearing Tr. at 69:18-22 (Court). Instead, the evidence will come in through an FBI agent. See Notice Hearing Tr. at 69:18-22 (Court). The United States also offers to redact the portion of the voicemail that refers to curfew, and the Court agrees to this redaction. See Notice Hearing Tr. at 73:1-7 (Court, Burkhead) The parties then move on to discussion of the fact that J. Ramirez was wearing a GPS ankle monitor and cut it off before the kidnapping. See Notice Hearing Tr. at 46:1-9 (Burkhead). The United States argues that this evidence is relevant for two reasons. First, the fact that J. Ramirez cuts off the ankle monitor before the kidnapping is relevant, because it is part of the plan of the kidnapping. See Notice Hearing Tr. at 46:15-22 (Burkhead). The United States argues that J. Ramirez could not wear an ankle monitor and kidnap someone at the same time, so J. Ramirez cuts off the ankle bracelet to accomplish the kidnapping without being caught. See Notice Hearing Tr. at 46:15-22 (Burkhead). Second, J. Ramirez is being tracked during the meeting with Bicondova and Small where J. Ramirez seeks to recruit them for the kidnapping, and the GPS evidence is relevant to establish that J. Ramirez is near the location of the alleged recruitment meeting. See Notice Hearing Tr. at 47:1-10 (Burkhead). J. Ramirez argues

that the United States' theory that J. Ramirez cuts the ankle monitor off to commit a kidnapping is fanciful and that all of this evidence is ancillary to the kidnapping itself. See Notice Hearing Tr. at 47:15-19 (Robert). The United States contends that evidence of cutting off the ankle monitor goes to the fact that J. Ramirez is the "mastermind of a kidnapping, who put the plan together." Notice Hearing Tr. at 48:11-13 (Burkhead). The Court questions J. Ramirez why the ankle monitor evidence is not admissible under res gestae. See Notice Hearing Tr. at 49:1-9 (Court). J. Ramirez answers that the United States is attempting to show the jury that J. Ramirez had just been released from jail before the kidnapping occurred, which is highly prejudicial and sufficiently ancillary to the kidnapping. See Notice Hearing Tr. at 49:1-9 (Robert). The Court concludes that the United States cannot mention the fact that J. Ramirez was just released from jail, but can include the fact of cutting off the ankle monitor as a bad act that is part of res gestae. See Notice Hearing Tr. at 50:4-7 (Court). The Court rules that the United States also cannot mention the tamper alert, and that the cutting off of the ankle bracelet must be addressed in passive voice: "The cut off bracelet was found at his residence." Notice Hearing Tr. at 72:11-16 (Court).

> **b.      Scheduling Conference.**

The Court first reconsiders its prior ruling and allows Wells to testify about the voicemail that J. Ramirez left her, as long as Wells is not identified as a probation officer. See Scheduling Conference Tr. at 8:12-15 (Court). J. Ramirez does not object to the change, because he prefers to have Wells available for cross-examination. See Scheduling Conference Tr. at 9:2-4 (Robert). The Court cautions the United States to be careful when examining Wells and clarifies its ruling on the evidence of J. Ramirez' GPS monitor. See Scheduling Conference Tr. at 9:16-18 (Court). The Court states that the United States cannot mention the fact of a GPS monitor and instead can explain to the jury only that J. Ramirez is being monitored and that he is at specific locations at certain

times.  See Scheduling Conference Tr. at 9:20-25 (Court).  In response to J. Ramirez' continued objection, the Court states that it believes that the evidence is relevant and probative, and part of res gestae, and is trying to sanitize the evidence's most prejudicial aspects.  See Scheduling Conference Tr. at 11:6-9 (Court).   The parties next revisit the ruling on the 2017 arrest of J. Ramirez and Bicondova where J. Ramirez is a passenger in a car that Bicondova is driving.  See Scheduling Conference Tr. at  17:22-25 (Burkhead). J. Ramirez objects to the testimony describing a high-speed car chase as more prejudicial than probative and argues that it is more appropriate to describe the incident as a traffic stop. See Scheduling Conference Tr. at 19:5-8 (Moss).  The United States responds that the high-speed chase is probative, because J. Ramirez recruits Bicondova into the kidnapping conspiracy as a driver, and this chase demonstrates J. Ramirez' opportunity to observe Bicondova's qualities as a getaway driver.  See Scheduling Conference Tr. at 19:17-25 (Burkhead). The Court proposes that the United States can elicit testimony that the officer initiates a traffic stop and the female driver does not stop until the vehicle is disabled.  See Scheduling Conference Tr. at 21:11-16 (Court).  J. Ramirez continues to object to this language, stating that the United States can meet the same objectives if all that is said is that the police make contact with Bicondova when she is driving a car in which J. Ramirez is riding.  See Scheduling Conference Tr. at 22:1-3 (Moss). The Court states that it will give the United States a little more than this language, to support the United States' theory as to why J. Ramirez picks Bicondova to drive during the kidnapping.  See Scheduling Conference Tr. at 22:4-7 (Court).  Finally, the parties discuss the boundaries of the testimony relating to J. Ramirez' firing for theft from Rader Awning, a business that Doe owns and operates.  See Scheduling Conference Tr. at 24:18-25 (Burkhead).  J. Ramirez objects to any explanation beyond the fact that Doe fires J. Ramirez, whereas the United States argues that the Court should admit the firing for unauthorized credit card use.  See Scheduling Conference Tr. at

26: 8-19 (Robert).  The Court rules that the fact that Doe fires J. Ramirez for "credit card use" is admissible.  See Scheduling Conference Tr. at 26:20 (Court).

### c.    Pretrial Conference.

At the pretrial conference, the Court states that it has thought about the previous ruling that it made regarding J. Ramirez' firing and that the Court concludes that it is not going to allow an explanation of the firing for the credit card use.  See Pretrial Conference Tr. at 1:19-22 (Court). The Court states that it does not know how much more that information gives the United States as far as explaining motivation.  See Pretrial Conference Tr. at 1:22-24 (Court).  The Court does suggest, however, that J. Ramirez might prefer that the jury know the reason for the firing, and if so, the Court states that J. Ramirez is free to go into that area.  See Pretrial Conference Tr. at 2:3-7 (Court).

### d.    Motions to Continue and Stay Hearing.

After the parties conclude discussing when the trial date for the second trial will be, the Court returns to the ruling that it previously had made regarding J. Ramirez' parole and GPS monitoring.  See Motions to Continue and Stay Hearing Tr. at 27:1-3 (Court).  The Court states that it would like to use a different word than monitoring, and asks the United States whether it is possible for their witness, Wells, to testify about J. Ramirez' location without mentioning the word monitor.  See Motions to Continue and Stay Hearing Tr. at 27:2-11 (Court).  The United States argues that being more vague than the word "monitor" will confuse the jury, and mentions that a juror from the first trial states that she believes the testimony about monitoring to refer to cellphone monitoring rather than a GPS ankle bracelet.  See Motions to Continue and Stay Hearing Tr. at 27:12-25 (Mease).  J. Ramirez responds that the word monitoring conveys official supervision and that there is a risk that another juror on another panel might understand monitoring to mean official

supervision. <u>See</u> Motions to Continue and Stay Hearing Tr. at 28:6-18 (Robert). The Court concludes that the United States cannot use the word monitor, only that Wells knows about J. Ramirez' locations through their professional relationship. <u>See</u> Motions to Continue and Stay Hearing Tr. at 28:19-25 (Court).

## <u>LAW REGARDING THE RELEVANCY OF EVIDENCE</u>

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." <u>Train v. City of Albuquerque</u>, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403). "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." <u>United States v. Gutierrez-Castro</u>, 2011 U.S. Dist. LEXIS 88440, at *3 (D.N.M. 2011)(Browning, J.)(citing Fed. R. Evid. 401)("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" <u>United States v. Ganadonegro</u>, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note). Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible. <u>See</u> Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## <u>LAW REGARDING RULE 403</u>

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence." Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)).  The United States Court of Appeals for the Tenth Circuit reminds district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."  United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

Evidence may be unfairly prejudicial if it likely will provoke an emotional response from the jury or would otherwise tend to affect adversely the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).  Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note).

## LAW REGARDING RULE 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith.  See Fed. R. Evid. 404(b). Rule 404(b) provides:

**(b)    Crimes, Wrongs, or Other Acts**.

(1)    **Prohibited Uses**. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2)    **Permitted Uses; Notice in a Criminal Case**. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:

(A)    provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B)    do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).  "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, 2011 U.S. Dist. LEXIS 147752, at *5 (D.N.M. 2011)(Browning, J.), aff'd on other grounds, 512 Fed. App'x. 841 (10th Cir. 2013)(unpublished).  "The rule, however, has a number of 'exceptions'[1] -- purposes for which

---

[1]The United States Court of Appeals for the Seventh Circuit states that describing rule 404(b)(2) as exceptions to 404(b)(1)'s broad rule is a misconception, because subsection (2) permits the evidence to be used for other purposes that subsection (1) does not describe.  See United States v. Gomez, 763 F.3d 845, 855 n.3 (7th Cir. 2014)(en banc).

A common misconception about Rule 404(b) is that it establishes a rule of exclusion subject to certain exceptions.  That's not quite right.  The text of the rule does not say that propensity evidence is inadmissible except when it is used to prove motive, opportunity, intent, etc.  Rather, it says that propensity evidence -- other-act evidence offered to prove a person's character and inviting an inference that he acted in conformity therewith -- is categorically inadmissible.  Fed. R. Evid. 404(b)(1).  But the rule also acknowledges that there may be "another" use for other-act evidence -- i.e., a different, non-propensity use. Fed. R. Evid. 404(b)(2). So it's technically incorrect to characterize the purposes listed in subsection (2) as "exceptions" to the rule of subsection (1).  The Rules of Evidence do contain some true exceptions to the rule against propensity evidence, but they're found elsewhere -- notably in Rules 412 through 415, which are limited to sexual-assault cases.  In contrast, the purposes enumerated in subsection (2) of Rule 404(b) simply identify situations in which the rule of subsection (1) by its terms does not apply.

such evidence will be admissible." <u>Wilson v. Jara</u>, 2011 U.S. Dist. LEXIS 147752, at *5. Those

purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or

absence of mistake or accident. <u>See</u> Fed. R. Evid. 404(b). The Supreme Court has enunciated a

four-part inquiry to determine whether evidence is admissible under rule 404(b). <u>See</u> <u>Huddleston</u>

<u>v. United States</u>, 485 U.S. 681, 691-92 (1988)(Rehnquist, J.). The Tenth Circuit consistently

applies that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

<u>United States v. Zamora</u>, 222 F.3d 756, 762 (10th Cir. 2000)(Ebel, J.)(citing <u>United States v.</u>

<u>Roberts</u>, 185 F.3d 1125 (10th Cir. 1999)(Porfilio, J.)). <u>See</u> <u>United States v. Higgins</u>, 282 F.3d

1261, 1274 (10th Cir. 2002)(Holloway, J.); <u>United States v. Hardwell</u>, 80 F.3d 1471, 1488 (10th

Cir. 1996)(Briscoe, J.)(citing <u>Huddleston v. United States</u>, 485 U.S. at 691-92).

When bad-act evidence is both relevant and admissible for a proper purpose, "the

proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link

of which may be the inference that the defendant has the propensity to commit the bad act." <u>United</u>

<u>States v. Morley</u>, 199 F.3d 129, 133 (3d Cir. 1999)(McKee, J.)(alterations omitted). The Tenth

Circuit has also stated that district courts must "identify specifically the permissible purpose for

which such evidence is offered and the inferences to be drawn therefrom." <u>United States v. Youts</u>,

229 F.3d 1312, 1317 (10th Cir. 2000)(Seymour, J.)(citing <u>United States v. Kendall</u>, 766 F.2d 1426,

---

<u>United States v. Gomez</u>, 763 F.3d at 855 n.3.

1436 (10th Cir. 1985)(Seymour, J.)).

> The Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts. In addition, the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or stating Rule 404(b) will not suffice.

United States v. Romine, 377 F. Supp. 2d 1129, 1132 (D.N.M. 2005)(Browning, J.)(quoting United States v. Kendall, 766 F.2d at 1436). Rules 401 to 403 and the conditional relevancy rules in rule 104(b) govern the applicable burden the proponent must meet to offer successfully evidence under rule 404(b). See Huddleston v. United States, 485 U.S. at 686-91.

## LAW REGARDING RES GESTAE

The Tenth Circuit has explained that, in the context of other acts evidence,[2] "[e]vidence of

---

[2]The term res gestae has other distinct but related meanings when used in other contexts. For example, in the hearsay context, "res gestae" is sometimes used as a synonym for the "Excited Utterance" hearsay exception in rule 803(2) of the Federal Rules of Evidence. United States v. Ledford, 443 F.3d 702, 710 (10th Cir. 2005)("We conclude that the more appropriate exception is *res gestae,* or the 'excited utterance' exception.")(italics in original)(source of quoted material not cited). See Res Gestae, Black's Law Dictionary (11th ed. 2019)("In evidence law, words and statements about the res gestae are usu. admissible under a hearsay exception (such as present sense impression or excited utterance)."). Commentators and jurists have long lamented the term's ambiguity and slipperiness: many decades ago, Dean Wigmore states:

> The phrase "res gestae" has long been not only entirely useless, but even positively harmful. It is useless because every rule of evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in terms of that principle. It is harmful, because by its ambiguity it invited the confusion of one rule with another and thus creates uncertainty as to the limitations of both.

6 Wigmore on Evidence § 1767, at 182 (3d ed. 1940). The Honorable Learned Hand, United States Circuit Judge for the United States Court of Appeals for the Second Circuit, writes -- rather saucily – that, "as for 'res gestae,' it is a phrase which has been accountable for so much confusion that it had best be denied any place whatever in legal terminology; if it means anything but an unwillingness to think at all, what it covers cannot be put in less intelligible terms." United States v. Matot, 146 F.2d 197, 198 (2d Cir. 1944)(source of quoted material not cited). These criticisms, moreover, are not a uniquely historical relic: as the Court discusses below, commentators and

other crimes should not be suppressed when those facts come in as *res gestae* -- 'as part and parcel of the proof of the offense[] charged in the indictment.'" United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995)(quoting United States v. Gano, 560 F.2d 990, 994 (10th Cir. 1977))(alteration and emphasis in United States v. Kimball, but not in United States v. Gano). The Tenth Circuit, quoting case law from the United States Court of Appeals for the Fourth Circuit, further explains that res gestae evidence -- Latin for "things done" -- is evidence that "provides the context for the crime, 'is necessary to a full presentation of the case,' or is 'appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae.'" United States v. Kimball, 73 F.3d at 272 (quoting United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980)). Although res gestae evidence is often evidence related to a person's uncharged crimes, wrongs, or other acts -- and therefore otherwise subject to rule 404(b)'s restrictions -- res gestae evidence is not subject to rule 404(b), see United States v. Irving, 665 F.3d 1184, 1212 (10th Cir. 2011), but it remains subject to Rule 403 balancing and "will be inadmissible . . . if it has no proper probative value," United States v. Piette, 45 F.4th 1142, 1155 (10th Cir. 2022)(quoting United States v. Irving, 665 F.3d at 1215 (Hartz, J., concurring)).

In the Tenth Circuit, in the context of other-acts evidence, the concept of "res gestae" is associated closely with "intrinsic" evidence: "Intrinsic other acts evidence encompasses conduct 'inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act.' . . . This is known as res gestae . . . ." United States v. Piette, 45 F.4th at 1155 (quoting United States v. Ford, 613 F.3d 1263, 1267). See

---

critics subject the more common contemporary version of the res gestae doctrine -- something more akin to the "part and parcel" or "inextricably intertwined" concept of res gestae that the Tenth Circuit applies -- to significant criticism. See footnote 4, infra, at 24.

United States v. Ford, 613 F.3d at 1267 ("An uncharged act is admissible as *res gestae* -- intrinsic evidence not subject to Federal Rule of Evidence 404(b) -- if 'it was inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act.'" (quoting United States v. Johnson, 42 F.3d 1312, 1316 (10th Cir. 1994))(italics in United States v. Ford)).[3]    See 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:33 (4th ed. 2023 update)(calling "inextricably intertwined" the "modern de-Latinized expression" of res gestae).   Tenth Circuit case law provides various formulations of what is considered "intrinsic" evidence, all of which are -- in the Court's view -- slight variations on the "inextricably intertwined" concept.   In United States v. Kupfer, 797 F.3d 1233 (10th Cir. 2015)(Bacharach, J.), the Tenth Circuit provides a bullet-point list of six categories of "intrinsic" evidence:

> We regard evidence as intrinsic when it
>
> • was "inextricably intertwined" with the charged conduct,

---

[3]One prominent evidence scholar, however, argues that "inextricably intertwined" and "intrinsic" are distinct concepts:

> The courts sometimes mention the "intrinsic" and "inextricably intertwined" theories in the same breath, but in principle, the two theories are distinguishable.  The former theory is that the testimony is part and parcel of the charged offense; thus, the wording of the allegation in the pleadings is expansive enough to encompass the conduct.  In contrast, when the thrust of the prosecution's argument is that the testimony about the uncharged misconduct is "inextricably intertwined" with the charged offense, it is implicit that there are two separate offenses.  Nevertheless, the prosecution argues that testimony about the two offenses is so closely related that the court should admit the evidence of the technically uncharged crime.  At the most fundamental level, the inextricably intertwined doctrine must be differentiated from the contention that the proffered testimony is intrinsic to -- and thus describes part of -- the charged crime.

Edward J. Imwinkelried, The Second Coming of Res Gestae: A Procedural Approach to Untangling the "Inextricably Intertwined" Theory for Admitting Evidence of an Accused's Uncharged Misconduct, 59 Cath. U. L. Rev. 719, 725 (2010)(footnotes omitted).

[United States v. Lambert, 995 F.2d 1006, 1007 (10th Cir. 1993) (quoting United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990)),]

- occurred within the same time frame as the activity in the conspiracy being charged, [see United States v. Parker, 553 F.3d 1309, 1315 (10th Cir. 2009)("The three transactions within the charged conspiracy time-frame are intrinsic to the crime and substantiate the criminal conspiracy.")],

- was a necessary preliminary to the charged conspiracy, [United States v. Lambert, 995 F.2d at 1007],

- provided direct proof of the defendant's involvement with the charged crimes, [United States v. Parker, 553 F.3d at 1314-15],

- was "entirely germane background information, . . . 'directly connected to the factual circumstances of the crime,'" [United States v. Irving, 665 F.3d 1184, 1212-13 (10th Cir. 2011)(quoting United States v. Parker, 553 F.3d at 1314),] or

- was necessary to provide the jury with background and context of the nature of the defendant's relationship to his accomplice[, United States v. Hall, 508 F. App'x 776, 779-80 (10th Cir.2013)(unpublished)].

United States v. Kupfer, 797 F.3d at 1238 (bracketed material added and footnote citations omitted). The Court understands these cases to instruct that, in determining whether a particular act is res gestae/intrinsic, the district court must assess whether that evidence fits into one of the recognized categories that the Tenth Circuit provides, and if the evidence fits into one of these categories, that evidence is "intrinsic" and is not subject to rule 404(b)'s prohibitions. See 2 Steven A. Saltzburg, Michael M. Martin, Daniel J. Capra & Jessica Berch, Federal Rules of Evidence Manual § 404.02[12] (13th ed. 2023)("Saltzburg")(noting that, because "the Committee Note to the 1991 amendment to Rule 404(b) delineates between acts that are covered by Rule 404(b) because they are 'extrinsic' to the charged offense and those that are not governed by the Rule

because they are 'intrinsic' to the charged offense," "there is an obvious need for line-drawing in applying Rule 404(b)," and "many federal courts simply label uncharged offenses offered against criminal defendants as 'inextricably intertwined' with the charged offense whenever they are related in any way to it" (source of quoted material not cited).[4]

---

[4]As indicated above, this understanding of res gestae as "inextricably intertwined" evidence -- untethered from a specifically hearsay-focused inquiry -- has also been subject to significant criticism. Saltzburg, for example, calls the "inextricably intertwined" test, in its various iterations, "confusing" and "complicated," and describes how the definition can lead to rulings that are "vague and conclusory." Saltzburg, supra, § 404.02[12]. This confusion arises from a basic analytical challenge: rule 404(b)(1)'s default rule provides that evidence "of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The challenge is to identify and characterize what "other" means in this context. The committee notes to the rule provide some instruction: The Committee Note to the 1991 amendment to rule 404(b) states that 404(b)'s prohibition "does not extend to evidence of acts which are 'intrinsic' to the charged offense." Ad. Comm. Notes to Fed. R. Evid. 404(b) (1991). Of course, this instruction is itself question-begging, because courts have been left to grapple with what "intrinsic" means. As Saltzburg notes, in determining what is "intrinsic," "many federal courts simply label uncharged offenses offered against criminal defendants as 'inextricably intertwined' with the charged offense whenever they are related in any way to it." Saltzburg, supra, § 404.02[12] (source of quoted material not cited). This understanding, based on acts that are in any way related to the charged crime, presents a danger of abuse, because it is too capacious. For example, as the Honorable Billy Roy Wilson, United States District Judge for the United States District Court for the Eastern District of Arkansas notes, the inextricably intertwined theory "appears to be close kin to the generic *res gestae* theory," and states that "[a] liberal view of the 'inextricably intertwined' exception to Rule 404(b) would essentially nullify the 404(b) restrictions on 'bad act' evidence." United States v. Ameri, 297 F. Supp. 2d 1168, 1169 (E.D. Ark. 2004)(Wilson, J.)( source of quoted material not cited).

In Saltzburg's view, "[p]art of the problem is that courts often use different phrases to capture the concept" of what crimes, acts, or wrongs are "other" in the context of rule 404(b): aside from "inextricably intertwined," "[e]xamples include acts that are 'intrinsic' to the crime charged; acts that form part of a 'single criminal episode'; acts that are an 'integral part' of the crime; and acts that 'complete the story' or 'explain the context' of the crime." Saltzburg, supra, § 404.02[12] (source of quoted material not cited). Saltzburg also quotes Professor Imwinkelried, stating:

> "Inextricably intertwined" is the "modern de-Latinized" version of *res gestae*, and it has been savaged by a similar critique. The standard has been described as "lack[ing] character" and "obscure," because it does not embody a clear substantive principle. . . . The vacuous nature of the test's wording gives courts license to employ sloppy analysis and allows them quickly to slip from a

conclusory analysis to a desired conclusion.  Simply stated, the indefinite phrasing
of the doctrine is a virtual invitation for abuse.

Saltzburg, supra, at § 404.02[12] (quoting Imwinkelried, supra, at 729-30).  See United States v.
Green, 617 F.3d 233, 248 (3d Cir. 2010)(Smith, J.)("Like its predecessor res gestae, the
inextricably intertwined test is vague, overbroad, and prone to abuse, and we cannot ignore the
danger it poses to the vitality of Rule 404(b)."). The phrases used to capture the concept, in
Saltzburg's view, run the risk of becoming mere "boilerplate jargon."  Saltzburg, supra,
§ 404.02[12].  In the Tenth Circuit, the Honorable Harris Hartz, United States Circuit Judge for
the Tenth Circuit, -- quoting Saltzburg -- voices his criticisms of the intrinsic/extrinsic dichotomy:
"[T]he distinction between intrinsic and extrinsic evidence is unclear and confusing, and can lead
to substituting conclusions for analysis." United States v. Irving, 665 F.3d at 1215 (Hartz, J.,
concurring). Judge Hartz, writing in concurrence, suggests that the Tenth Circuit "abandon the
use of the intrinsic/extrinsic dichotomy in analyzing whether evidence of uncharged misconduct
is admissible." United States v. Irving, 665 F.3d at 1215.

    In place of vague, unclear, and confusing tests, Saltzburg suggests the use of "a careful
analysis" in which "Rule 404(b) should apply to all specific bad acts proffered by the prosecution,
unless such acts occurred in the time period covered by the indictment and are substantively related
to the charges," and to determine whether the bad acts are "substantively related to the charges,"
Saltzburg looks to the United States Court of Appeals for the Third Circuit's test, which

> reserve[s] the "intrinsic" label for two narrow categories of evidence.  First,
> evidence is intrinsic if it "directly proves" the charged offense. . . .  This gives
> effect to Rule 404(b)'s applicability only to evidence of "*other* crimes, wrongs, or
> acts." Fed.R.Evid. 404(b) (emphasis added).  If uncharged misconduct directly
> proves the charged offense, it is not evidence of some "other" crime. . . .  Second,
> "uncharged acts performed contemporaneously with the charged crime may be
> termed intrinsic if they facilitate the commission of the charged crime." [United
> States v.] *Bowie*, 232 F.3d [923,] 929 [(D.C. Cir. 2000)].  But all else must be
> analyzed under Rule 404(b).

United States v. Green, 617 F.3d at 248-49.  The Court takes this commentary seriously, and agrees
with Saltzburg, Judge Hartz, and Judge Wilson, that too liberal an understanding of "inextricably
intertwined" poses a danger to the underlying policy of rule 404(b)'s prohibitions.  The Court also
shares Saltzburg's view that -- in many instances -- other acts that are purportedly "inextricably
intertwined" with the charged crime just as easily could be admitted pursuant to a proper purpose
under rule 404(b).  See Saltzburg, supra, at § 404.02[12]; Imwinkelried, supra, at 726 ("In many
of the cases in which the courts have invoked the [inextricably intertwined] doctrine, they could
just as easily have relied on a recognized noncharacter theory, such as motive.").  This reality is
especially true in the Tenth Circuit, where "[o]ne proper purpose for admitting Rule 404(b)
evidence is to show the context of a charged crime." United States v. Sarracino, 131 F.3d 943,
949 (10th Cir. 1997).

    In any event, the Court, as a district court, is duty bound to follow faithfully binding Tenth
Circuit case law.  The Court will continue to deploy the concept of res gestae, but with the

The Court has analyzed and discussed these concepts in various cases.  In Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2011 WL 6739166 (D.N.M. Nov. 1, 2011)(Browning, J.), the Court allows evidence that, in the course of an allegedly unlawful arrest, a plaintiff spat on and touched the defendant police officers.  See 2011 WL 6739166, at *8.  The Court concludes that the spitting was "res gestae of the incident," because it places the plaintiff's conduct "in context": "If Wilson's touching of a police officer, and other conduct and speech, contributed to [her son's] resisting arrest, her conduct could be viewed as disturbing the peace and disorderly conduct . . . .  Wilson should not be able to suggest that everything was calm and her son did not resist arrest." 2011 WL 6739166, at *8.

In United States v. Ganadonegro, No. CR 09-0312 JB, 2011 WL 3957549 (D.N.M. Aug. 30, 2011)(Browning, J.), the Court allows evidence that a defendant, accused of causing the death of an infant child, calls a family member on three occasions to complain that he can not get the infant to stop crying and that the infant is crying when the family member arrived.  See 2011 WL

---

academic and judicial criticisms firmly in mind.  The Court understands that -- in the Tenth Circuit -- res gestae is a subcategory of "intrinsic evidence," and includes evidence that "provides the context for the crime, 'is necessary to a full presentation of the case,' . . . is 'appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae,'" United States v. Kimball, 73 F.3d at 272 (quoting United States v. Masters, 622 F.2d at 86), or is "inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act," United States v. Ford, 613 F.3d at 1267.  In applying this rule, however, the Court is cautious about running roughshod over the prohibitions of rule 404(b) by applying these parameters too loosely.

Going forward, when considering res gestae evidence, the Court uses the following procedure.  When assessing the evidence's admissibility, rather than the Court or the United States jumping immediately to res gestae, the Court first asks the United States to assess whether the evidence fall under a proper rule 404(b) purpose, like "context."  See United States v. Sarracino, 131 F.3d at 949; Saltzburg, supra, at § 404.02[12].  By taking this analytical approach, the Court will be careful to limit the admissible evidence to that which is absolutely necessary to explain the context of the crime, and avoid the possibility that improper character evidence is smuggled in via the res gestae doctrine.

3957549, at *1.  The Court concludes that the evidence is res gestae and background information useful to "paint the picture that the baby cried a lot" and not that the defendant acted in conformity with his previous conduct.  2011 WL 3957549, at *5 ("[T]he evidence that the United States seeks to introduce is not 404(b) evidence . . . .  [I]t is closer to background evidence or res gestae evidence.").

## ANALYSIS

The Court grants in part and denies in part the United States' evidentiary requests in Notice I, and grants in part and denies in part the United States' evidentiary requests in Notice II.  The Court conducts its analysis in five sections.  First, the Court concludes that the United States can introduce evidence of the 2017 encounter between J. Ramirez and the Valencia County Sheriff's Department in a car that Bicondova is driving as proper rule 404(b) evidence.  The United States cannot introduce, however, evidence of the arrest that stems from this 2017 encounter, because the Court concludes that this evidence is substantially more prejudicial than probative and therefore excludes this additional detail under rule 403.  Second, the Court concludes that the United States can introduce evidence of J. Ramirez' firing in 2013 from the business that Doe owns and operates as proper rule 404(b) evidence or, in the alternative, as res gestae evidence.  The United States cannot introduce, however, the motivation behind the firing, because the Court concludes that this evidence is substantially more prejudicial than probative and therefore excludes this additional detail under rule 403.  Third, the Court concludes that the United States can introduce evidence of J. Ramirez' prescription medications as res gestae evidence.  The United States cannot, however, introduce that Southern NM releases J. Ramirez on July 2, 2018, or the fact that Southern NM prescribes the prescriptions to J. Ramirez, because this evidence is substantially more prejudicial than probative and therefore the Court excludes this additional detail under rule 403.  Fourth, the

Court concludes that the United States can introduce evidence of a voicemail that J. Ramirez leaves

Wells, in which he states he is at a bus station at the Rio Bravo and Second St. intersection, as well

as the telephone number from which J. Ramirez calls as proper rule 404(b) evidence or, in the

alternative, as res gestae evidence. The United States cannot introduce, however, evidence that J.

Ramirez is on parole, that he is speaking in the voicemail to a parole officer, or that he has a curfew,

because the Court concludes that this evidence is substantially more prejudicial than probative and

therefore excludes these details under rule 403. Finally, the Court concludes that the United States

cannot introduce evidence that J. Ramirez must wear an ankle monitor, that J. Ramirez cuts off the

ankle monitor, that the State deems J. Ramirez an absconder and issues a State warrant for his

arrest, or that J. Ramirez is being monitored, because this evidence is substantially more prejudicial

than probative, and therefore the Court excludes these details under rule 403.

I.     **EVIDENCE OF J. RAMIREZ' ENCOUNTER IN 2017 WITH THE VALENCIA COUNTY'S SHERIFF DEPARTMENT IN A CAR THAT BICONDOVA DRIVES IS ADMISSIBLE, BUT THE COURT WILL NOT ADMIT EVIDENCE OF J. RAMIREZ' SUBSEQUENT ARREST.**

The United States contends that evidence that on April 28, 2017, Valencia County Sheriff's

Deputies encounter and arrest J. Ramirez in a motor vehicle which Bicondova drives, is admissible

under rule 404(b). See Notice I at 10. As discussed, see Law Regarding Rule 404(b), supra 20-23,

evidence is admissible under rule 404(b) if it passes the four-part test that the Supreme Court

enunciates:

> To determine whether Rule 404(b) evidence was properly admitted we look
> to [a] four-part test: (1) the evidence must be offered for a proper purpose; (2) the
> evidence must be relevant; (3) the trial court must make a Rule 403 determination
> of whether the probative value of the similar acts is substantially outweighed by its
> potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court
> shall, upon request, instruct the jury that evidence of similar acts is to be considered
> only for the proper purpose for which it is admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125, 1141 (10th Cir. 1999)).  In demonstrating the test's first part, the United States argues that this evidence is admissible for a proper purpose under rule 404(b), because this evidence goes towards proving the identity of the person who kidnapped Doe.  See Notice I at 10.  The United States submits that this evidence provides context to the statement that J. Ramirez makes to Agent Fondse in which J. Ramirez states that he does not know Bicondova, despite the fact that he is arrested in a car with Bicondova before the kidnapping.  See Notice I at 11.  The United States states that J. Ramirez lies in an attempt to distance himself from Bicondova, his co-conspirator in the kidnapping plot.  See Notice I at 11.  The United States argues that this lie is "compelling circumstantial proof of his participation in the charged offenses."  See Notice I at 11.

The Court concludes that this purpose is proper, and therefore rule 404(b)(1) does not bar the admission of this evidence.  Rule 404(b)(1) prohibits using evidence of other acts to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  This rule does not prohibit the proponent from offering evidence for "another purpose," and identity is one of the listed permissible purposes in rule 404(b)(2) for other-act evidence.  Fed. R. Evid. 404(b)(2). The Tenth Circuit considers rule 404(b) "to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition."  United States v. Tan, 254 F.3d 1204, 1208 (10th Cir. 2001)(quoting United States v. Van Metre, 150 F.3d 339, 349 (4th Cir. 1998))(emphasis in United States v. Tan and United States v. Van Metre).  The Court concludes that this evidence is not evidence which tends to prove *only* criminal disposition.  Rather, as the United States argues, this evidence helps prove the kidnapper's identity, because of the inference that someone who has committed a kidnapping with Bicondova will later lie to an FBI Agent about his acquaintance with

Bicondova, despite considerable evidence to the contrary. See Notice I at 11. Such evidence does not bear on J. Ramirez' character in the manner that rule 404(b)(1) prohibits; the United States does not offer the evidence "to prove [J. Ramirez'] character in order to show that on a particular occasion [J. Ramirez] acted in accordance with the character." Fed. R. Evid. 404(b)(1). The Court therefore concludes that the United States offers this evidence for a proper purpose.

To be admissible, the evidence also must be relevant. The threshold for a finding of relevancy is low; evidence needs only to have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. See Fed. R. Evid. 401. The evidence regarding J. Ramirez' interaction with the Valencia County Sheriff's Department and subsequent arrest in a car that Bicondova is driving is relevant, because it tends to make the fact that J. Ramirez is the kidnapper more probable than it would be in the evidence's absence. This conclusion is because a juror could draw the inference that J. Ramirez would not have had reason to lie about his prior relationship with Bicondova, a relationship that this evidence establishes, unless he commits the kidnapping with Bicondova and does not want law enforcement to connect him to Bicondova.

The Court still must exclude relevant evidence, however, under rule 403 if one or more of the dangers of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," substantially outweighs the evidence's probative value. Fed. R. Evid. 403. The Court concludes that the evidence that the Valencia County Sheriff's Department finds J. Ramirez in a car with Bicondova has high probative value, because it establishes a connection between J. Ramirez and Bicondova, and that the prejudice to J. Ramirez which results from this evidence is not prejudicial to an unfair degree. United States v. Archuleta, 737 F.3d 1287, 1293 (10th Cir. 2013)("Virtually all relevant evidence is prejudicial

to one side or the other.").  The Court concludes, however, that the risk of undue prejudice substantially outweighs the probative value of the additional information that the United States wants to present -- that the Valencia County Sheriff's Department arrests J. Ramirez in connection with this encounter.  That the deputies arrest J. Ramirez, or any indication of criminal activity does not advance significantly the purpose for which the United States seeks to admit it, namely that J. Ramirez and Bicondova are acquainted, a fact about which J. Ramirez later lies to Fondse.  There is a likelihood that a juror will use this information for an impermissible rule 404(b) purpose, specifically, assuming that, because deputies arrested J. Ramirez in the past, that he is more likely to engage in criminal activity and therefore commit the kidnapping with which he is charged. Introducing the fact of J. Ramirez's arrest likely will "tend[] to affect adversely the jury's attitude toward the defendant <u>wholly apart</u> from its judgment as to his guilt or innocence of the crime charged." <u>United States v. Otuounye</u>, 995 F.3d 1191, 1207 (10th Cir. 2021)(quoting <u>United States v. Meritt</u>, 961 F.3d 1105, 1115 (10th Cir. 2020))(emphasis in <u>United States v. Otuounye</u> and <u>United States v. Meritt</u>). The Court therefore concludes that -- when assessed according to rule 404(b)'s restrictions -- evidence of J. Ramirez' interaction with the Valencia County Sheriff's Department in a car driven by Bicondova is admissible, but the Court will not admit evidence of J. Ramirez' subsequent arrest; the United States can elicit testimony only that the officer initiated a traffic stop and Bicondova did not stop until the vehicle was disabled.

## II.    EVIDENCE OF J. RAMIREZ' FIRING IN 2013 FROM A BUSINESS THAT DOE OWNS AND OPERATES IS ADMISSIBLE, BUT THE COURT DOES NOT <u>ADMIT THE MOTIVATION BEHIND THE FIRING</u>.

The United States contends that evidence of J. Ramirez' firing for credit card theft from a business that Doe owns and operates is admissible, because it is part of the res gestae for the charged crimes.  <u>See</u> Notice I at 8.  In the alternative, the United States contends that evidence of

J. Ramirez' firing for theft is admissible under rule 404(b).  As discussed above, see Law Regarding Res Gestae, supra at 29 n.4, the Court begins its analysis of these contentions with the rule 404(b) argument, before turning to an analysis whether the evidence is res gestae evidence. On these questions, the Court concludes that evidence of J. Ramirez' firing is admissible consistent with rule 404(b), because evidence of J. Ramirez' firing is not to show J. Ramirez' character or conformity therewith.  Rather, the evidence is probative of J. Ramirez' motive to commit the alleged crime, and the various dangers of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" do not outweigh substantially this probative value. Fed. R. Evid. 403.  Moreover, the Court agrees with the United States' contention that the evidence is admissible as res gestae, because the evidence provides the charged crimes' context, i.e., it is "entirely germane background information, which is 'directly connected to the factual circumstances of the crime.'"  United States v. Irving, 665 F.3d at 1213 (quoting United States v. Parker, 553 F.3d at 1314).  The Court does not allow the United States to introduce, however, the motivation behind J. Ramirez' firing, because this evidence is substantially more prejudicial than probative.  J. Ramirez may, however, introduce this evidence if he thinks it is helpful to him for some reason.

    **A.    RULE 404(B) DOES NOT PROHIBIT EVIDENCE OF J. RAMIREZ' TERMINATION FROM A BUSINESS THAT DOE OWNS AND OPERATES.**

As discussed, see Law Regarding Rule 404(b), supra at 20-23, the proponent must offer -- as a first step to admissibility -- evidence for a proper purpose.  See United States v. Zamora, 222 F.3d at 762.  Rule 404(b)(1) prohibits using evidence of other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  As noted above, however, this rule does not prohibit evidence that the

proponent offers "for another purpose," and rule 404(b)(2) lists various permissible purposes for crime, wrong, or other act evidence: "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404.

The United States states its intent to offer this evidence for a proper purpose -- both to show that J. Ramirez has motive to commit the alleged crime against this particular victim, and to establish the kidnapper's identity. See Notice I at 10. The United States argues that the fact of J. Ramirez' firing from Doe's business gives J. Ramirez the motive to kidnap Doe, and makes it more probable that J. Ramirez is the one who commits the kidnapping, because of his resentment towards Doe for firing him. See Notice I at 10.

The Court concludes that this purpose is proper, and therefore rule 404(b) does not bar the admission of this evidence. Rule 404(b)(1) prohibits using evidence of other acts to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). This rule does not prohibit the proponent from offering evidence for "another purpose," and both motive and identity are listed as permissible purposes in rule 404(b)(2) for other act evidence. Fed. R. Evid. 404(b)(2). The Tenth Circuit considers rule 404(b) "to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." United States v. Tan, 254 F.3d at 1208 (10th Cir. 2001)(quoting United States v. Van Metre, 150 F.3d at 349 (4th Cir. 1998))(emphasis in United States v. Tan and United States v. Van Metre). The Court concludes that this evidence is not evidence which tends to prove only criminal disposition. Rather, as the United States argues, this evidence helps prove both that J. Ramirez has the motive to commit the kidnapping, and the identity of the kidnapper. See Notice I at 10. This evidence is probative because Doe's firing of J. Ramirez gives J. Ramirez a motive – revenge -- for carrying out the kidnapping, and J. Ramirez' motive

makes it more likely that J. Ramirez is the one who carries out the kidnapping. Such evidence does not bear on J. Ramirez' character in the manner that rule 404(b)(1) prohibits; the United States does not offer the evidence "to prove [J. Ramirez'] character in order to show that on a particular occasion [J. Ramirez] acted in accordance with the character." Fed. R. Evid. 404(b)(1).  The Court therefore concludes that the United States offers the evidence for a proper purpose.

Even though the United States offers the evidence for a proper purpose under rule 404, the evidence also must be relevant to be admissible. The Court concludes that this evidence is relevant. As noted, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The Court concludes that evidence of J. Ramirez' firing from a business Does owns and operates for credit card theft is relevant, because it makes both the fact that J. Ramirez has a motive to commit the kidnapping and the fact that J. Ramirez is the one to commit the kidnapping more probable than it would be without the evidence. The requirement of relevancy is a very low bar, and the Court concludes that this evidence meets that requirement.

A court still must keep out relevant evidence, however, under rule 403, if the probative value of the evidence is "substantially outweighed" by "a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  The Court concludes that the evidence that Doe fires J. Ramirez has high probative value, because it establishes a motive for J. Ramirez to commit the kidnapping and provides an explanation for why J. Ramirez is more likely to commit the kidnapping of Doe than a stranger.  The Court also concludes that the prejudice to J. Ramirez which results from this evidence is not prejudicial to an unfair degree.  United States v. Archuleta, 737 F.3d 1287, 1293 (10th Cir. 2013)("Virtually all relevant evidence is prejudicial to one side or

the other.").  The Court concludes, however, that this finding does not apply to the additional information that the United States wishes to present -- that Doe fires J. Ramirez specifically for credit card theft, because the risk of undue prejudice substantially outweighs the probative value of this information.  That Doe fires J. Ramirez for credit card theft does not advance significantly the purpose for which the United States seeks to admit it, namely that J. Ramirez had resentment towards Doe and therefore a motive to kidnap him.  There is a possibility that a juror will use this information for an impermissible rule 404(b) purpose.  A juror can assume that, because J. Ramirez is willing to engage in unlawful activity, and that J. Ramirez targets this unlawful activity against Doe, that J. Ramirez is therefore more likely to commit the kidnapping of Doe.  Introducing the fact of J. Ramirez's arrest will "tend[] to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged."  United States v. Otuounye, 995 F.3d at 1207 (10th Cir. 2021)(quoting United States v. Meritt, 961 F.3d at 1115 (10th Cir. 2020))(emphasis in United States v. Otuounye and United States v. Meritt).  The Court therefore concludes that -- when it assesses the evidence according to rule 404(b)'s restrictions -- evidence of Doe's firing of J. Ramirez from a business that Doe owns and operates is admissible, but the United States cannot admit evidence of the motivation behind J. Ramirez' firing.  The Court acknowledges, however, that there is the possibility that J. Ramirez may wish to introduce evidence of the reason behind his firing, to dispel juror speculation as to the cause of the firing. The Court, therefore, concludes that J. Ramirez may admit the evidence of the motivation behind his firing -- credit card misuse -- should J. Ramirez wish to introduce the evidence.

### B.  EVIDENCE OF J. RAMIREZ' FIRING FROM A BUSINESS THAT DOE OWNS AND OPERATES IS ADMISSIBLE AS RES GESTAE.

Having concluded that the evidence is admissible pursuant to rule 404(b), the Court now considers whether, in the alternative, the evidence is admissible as res gestae.  As discussed, see

Law Regarding Res Gestae, <u>supra</u> at 24, res gestae evidence is evidence that "provides the context for the crime, 'is necessary to a full presentation of the case,' or is 'appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae.'" <u>United States v. Kimball</u>, 73 F.3d at 272 (quoting <u>United States v. Masters</u>, 622 F.2d 83, 86 (4th Cir. 1980)).  In the Tenth Circuit, in the context of other acts evidence, the concept of "res gestae" is associated closely with "intrinsic" evidence.  <u>See</u> <u>United States v. Ford</u>, 613 F.3d at 1267 ("An uncharged act is admissible as res gestae -- intrinsic evidence not subject to Federal Rule of Evidence 404(b) -- if 'it was inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act.'" (quoting <u>United States v. Johnson</u>, 42 F.3d 1312, 1316 (10th Cir. 1994)).  Although res gestae evidence is not subject to rule 404(b), it is still subject to rule 403's balancing test -- meaning that it may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice."  <u>See</u> <u>United States v. Irving</u>, 665 F.3d at 1212; Fed. R. Evid. 403.

In Notice I, the United States argues that evidence of J. Ramirez' firing for theft is res gestae evidence because it is "proper background evidence."  Notice I at 8.  The United States submits that this evidence provides direct evidence on numerous relevant facts, namely that:

> (1) the defendant knew John Doe; (2) the circumstances surrounding how the two men knew each other; (3) how the defendant gained familiarity with John Doe's pattern of life, including what time he left for work in the morning; and (6) why the defendant held a grudge against John Doe such that he was willing to kidnap him.

Notice I at 8.

The United States contends that without this evidence, the jury will be "left with an incomplete story of the kidnapping" and the jury could be led to the "false conclusion that this was a random crime, rather than one where the defendant specifically targeted John Doe for revenge and out of

greed." Notice I at 8. The Court agrees with the United States, and concludes that this evidence is proper res gestae evidence. One category of intrinsic evidence is evidence that provides "entirely germane background information, . . . directly connected to the factual circumstances of the crime." United States v. Kupfer, 797 F.3d at 1238 (quoting United States v. Irving, 665 F.3d at 1212). The Court concludes that this evidence is such background evidence; the evidence of J. Ramirez' prior employment with Doe and J. Ramirez' subsequent firing explains J. Ramirez' relationship to Doe, and why J. Ramirez chooses Doe as the victim for the alleged kidnapping. The Court determines that this evidence is directly connected to the crime's factual circumstances, because it provides an explanation why J. Ramirez carries out the kidnapping, and why Doe is the victim. Additionally, the Court concludes that this evidence is necessary to the case's presentation, because the Court agrees with the United States that in the absence of this evidence, a juror likely will wonder at the motivation behind the kidnapping and may come to the conclusion that the kidnapping is random, or that J. Ramirez is not connected sufficiently to the kidnapping.

J. Ramirez objects to the introduction of this evidence as res gestae, because the firing occurs in 2013, and the kidnapping does not occur until 2018. See Notice Hearing Tr. at 36: 2-8 (Robert). Although a temporal relationship is one way that evidence can be intrinsic, and therefore admissible as res gestae, a temporal relationship is not a requirement for evidence to be admitted properly as res gestae. See United States v. Kupfer, 797 F.3d at 1238 (listing examples of intrinsic evidence, and listing a temporal relationship separate and apart from background information to the crime). Evidence is also res gestae if it "provides the context of the crime." United States v. Kimball, 73 F.3d at 272. As stated above, the Court determines that this evidence provides context for the crime. The Court concludes, therefore, that this evidence is proper res gestae evidence.

Proper res gestae evidence, however, remains subject to rule 403 balancing. See United

States v. Piette, 45 F.4th at 1155.  Rule 403 counsels that the court should exclude relevant evidence only if "its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."  Fed. R. Evid. 403.  As discussed above in section I(B), in conjunction with the discussion of the admissibility of this evidence under rule 404(b), the Court determines that evidence of Ramirez' firing is not substantially more prejudicial than probative, and the Court therefore admits this evidence.  The Court concludes that the motivation behind the firing, J. Ramirez' credit card theft, however, is unfairly prejudicial to J. Ramirez such that the Court excludes it under rule 403, unless J. Ramirez chooses to admit it.  The reason does not add much, if anything, except to make J. Ramirez look like a thief.

## III.  EVIDENCE OF J. RAMIREZ' PRESCRIPTION MEDICATION, FOUND AT ONE OF THE CRIME SCENES, IS ADMISSIBLE, BUT THE COURT DOES NOT ADMIT THE FACT OF J. RAMIREZ' DETENTION AND SUBSEQUENT RELEASE FROM SOUTHERN NM ON JULY 2, 2018 OR THE FACT THAT SOUTHERN NM PRESCRIBES THE PRESCRIPTIONS TO J. RAMIREZ.

The United States contends that evidence of J. Ramirez' prior incarceration and release from Southern NM on July 2, 2018, and the issuance of two prescription medications, that are later found at one of the crime scenes, to J. Ramirez upon his release from Southern NM, is admissible, because it is part of the res gestae for the charged crimes.  See Notice II at 5.  In the alternative, the United States contends that evidence of J. Ramirez' incarceration and prescription medication is admissible under rule 404(b).  See Notice II at 9.  The Court first concludes that evidence of J. Ramirez' incarceration and subsequent release from Southern NM, as well as the fact that Southern NM prescribes his prescription medications to him, are not admissible, either as proper rule 404(b) evidence or res gestae evidence.  Although the Court concludes that the United States offers the evidence for a proper rule 404(b) purpose, and qualifies as res gestae evidence, the Court determines that rule 403 bars this evidence from admission, because the "danger of unfair

prejudice" substantially outweighs the evidence's probative value. Fed. R. Evid. 403. The Court concludes, however, that evidence of J. Ramirez' prescription, as well as the fact that the medication is found at one of the crime scenes, are properly admissible as relevant evidence.

> **A. EVIDENCE OF J. RAMIREZ' INCARCERATION AND SUBSEQUENT RELEASE FROM SOUTHERN NM, AS WELL AS THE FACT THAT SOUTHERN NM PRESCRIBES THE PRESCRIPTIONS TO J. RAMIREZ, ARE NOT ADMISSIBLE EITHER AS RULE 404(b) OR AS RES GESTAE EVIDENCE.**

Rule 404(b) evidence allows the Court to admit evidence of other-acts at trial as long as the evidence is for a proper purpose -- as long as the evidence is not propensity evidence. See Fed. R. Evid 404(b). Res gestae similarly allows the Court to admit evidence of other-acts as long as the evidence is intrinsic -- inextricably intertwined -- to the crime charged. See United States v. Piette, 45 F.4th at 1155. Neither rule 404(b) nor res gestae, however, allow evidence to be introduced if rule 403 excludes the evidence; that is, if the evidence's "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Even after concluding that the evidence is proper under rule 404(b) or res gestae, therefore, the Court still must inquire whether rule 403 bars the admission of the evidence. See Huddleston v. United States, 485 U.S. 681, 691-692 (1988)(requiring a trial court to make a rule 403 determination before admitting rule 404(b) evidence); United States v. Piette, 45 F.4th at 1155 (explaining that res gestae evidence remains subject to rule 403 balancing).

The United States argues that evidence of J. Ramirez' release and issuance of prescriptions from Southern NM is admissible as proper rule 404(b) evidence, because evidence of J. Ramirez' "release from incarceration just weeks before the offense with two prescriptions in hand is direct evidence of [J. Ramirez'] identity as the offender." Notice II at 9. The United States contends that,

because these same prescription bottles are later found at one of the crime scenes, that this evidence therefore directly bears on identity, which is a proper purpose to admit other act evidence under rule 404(b)(2).  See Notice II at 9.  The United States also argues that this evidence is admissible as res gestae evidence, because the evidence of J. Ramirez' prescription directly links J. Ramirez to the crime scene, where the pill bottles prescribed to J. Ramirez are found.  See Notice II at 5.  The United States argues that this evidence is necessary to explain J. Ramirez' medical prescriptions and refute "any suggestion that the medication changed hands."  Notice II at 5.

The Court first concludes that the United States offers this evidence for a proper purpose, and therefore rule 404(b)(1) does not bar the admission of this evidence.  Rule 404(b)(1) bars only the admission of other-act evidence that the proponent offers for a propensity purpose, that is, evidence that the proponent offers to show a defendant's character to prove that the defendant acted in conformity with that character.  Fed. R. Evid. 404(b)(1).  Rule 404(b) does not bar evidence that the proponent offers for a permissible purpose, and one of the stated permissible purposes under rule 404(b)(2) is evidence of identity.  See Fed. R. Evid. 404(b)(2).  The United States proposes to introduce this evidence to prove J. Ramirez' identity as the offender in this case, because J. Ramirez' prescription medications are at the crime scene.  See Notice II at 9.  Because the United States offers this evidence for a proper purpose and not solely to prove criminal disposition, the Court concludes that rule 404(b)(1) does not bar this evidence.  See United States v. Tan, 254 F.3d at 1208 (quoting United States v. Van Metre, 150 F.3d at 349)(explaining that rule 404(b) admits "all evidence of other crimes or acts except that which tends to prove *only* criminal disposition")(emphasis in United States v. Tan and in United States v. Van Metre).

The Court similarly concludes that this evidence is proper res gestae evidence.  Evidence is properly admissible as res gestae evidence if the evidence "provides the context for the crime, 'is

necessary to a full presentation of the case,' or is 'appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae.'"  United States v. Kimball, 73 F.3d at 272 (quoting United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980)).  In the Tenth Circuit, evidence is also considered intrinsic and therefore proper res gestae evidence if it provides direct proof of the defendant's involvement with the charged crimes.  See United States v. Parker, 553 F.3d at 1314.  The Court concludes that evidence of J. Ramirez' prescription medication, that Southern NM prescribes to him shortly before the commission of the offense, which is found at one of the crime scenes, is appropriate res gestae evidence, because it is direct proof of J. Ramirez' involvement with the charged crimes.  Additionally, the Court concludes that this evidence is necessary to the case's full presentation, because it is real evidence that places J. Ramirez at one of the crime scenes, and the United States cannot effectively explain the import of this evidence without explaining that this medication was prescribed to J. Ramirez.  Accordingly, the Court agrees with the United States that this evidence is proper res gestae evidence.

Additionally, Rule 401 requires that evidence be relevant to a fact of consequence to be admissible.  See Fed. R. Evid. 401.  This relevancy requirement requires that the fact "provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict."  United States v. Jordan, 485 F.3d 1214, 1218 (10th Cir. 2007).  The evidence must have only "any tendency" to make the fact "more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Here, the fact that J. Ramirez' prescription medication, which he had in his possession when he left Southern NM on July 2, 2018, and was later found at one of the crime scenes after the charged offense occurred on July 26, 2018, make it more probable than in the absence of the evidence that J. Ramirez was the offender who carried out the charged offense.  The Court concludes that this fact is of consequence, because facts about

J. Ramirez' identity as the offender is directly necessary to this case's verdict. The Court, therefore, concludes that this evidence is relevant under rule 401.

Despite the fact that this evidence is both proper rule 404(b) evidence and res gestae evidence, however, the Court concludes evidence of J. Ramirez incarceration and subsequent release from Southern NM, as well as the fact that Southern NM prescribes the medication to J. Ramirez, is inadmissible under rule 403. Rule 403 requires the exclusion of otherwise admissible evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403. Although all evidence is prejudicial to some degree, unfair prejudice results when the evidence makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged. See United States v. Rodriguez, 192 F.3d at 951. The Court determines that evidence of J. Ramirez' prior incarceration at Southern NM, introduced either through the fact of the date of J. Ramirez' release or the fact that Southern NM prescribes the prescription medications to him, is unfairly prejudicial to J. Ramirez. Under the Anglo-American judicial tradition, the government tries a defendant only for the crime for which the defendant is charged, and the court should keep out evidence of a defendant's other misdeeds, "lest the jury convict the defendant for being a bad person." United States v. Chaco, 801 F. Supp. 2d 1217, 1228 (D.N.M. 2011)(Browning, J.)(discussing the admissibility of prior convictions). The Court concludes that, if the Court introduces evidence of J. Ramirez' prior incarceration, that a juror could convict J. Ramirez on the assumption that he is a criminal rather than because the United States convinces a juror beyond a reasonable doubt that J. Ramirez is guilty of the crime charged. The United States represents that it does not "intend to harp on the fact that [J. Ramirez] was incarcerated, nor will it attempt to

admit evidence of the details of the prior conviction or length of incarceration." Notice II, at 9. The Court determines, however, that this promise does not negate the prejudice to J. Ramirez that will occur if the jury learns that the State of New Mexico released J. Ramirez from incarceration shortly before the commission of the charged offense. The Court also determines that the probative value of this evidence, establishing that J. Ramirez had the prescription upon release from incarceration only a few weeks before the charged offense, and therefore making it more likely that J. Ramirez was still in possession of the medication at the time of the charged offense, is low. The jury still will receive the major import of the evidence -- that J. Ramirez' prescription medication is at the crime scene -- even without knowing that J. Ramirez has this prescription upon his release from incarceration a few weeks before the offense. Accordingly, the Court determines that this evidence is substantially more prejudicial than probative, and the Court excludes these prejudicial details under rule 403.

### B. EVIDENCE THAT J. RAMIREZ' PRESCRIPTION MEDICATION IS AT ONE OF THE CRIME SCENES IS ADMISSIBLE AS RELEVANT EVIDENCE.

The baseline rule of evidence is that, "under the Federal Rules of Evidence, all evidence that is relevant is admissible -- unless another law or rule excludes the evidence -- and any evidence that is not relevant is not admissible." United States v. Begay, 497 F. Supp. 3d 1025, 1051 (D.N.M. 2020)(Browning, J.). One way that a court should keep out relevant evidence is if it is impermissible character evidence, that is, "evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). The court should not admit relevant evidence of any other crime, wrong, or act if it is propensity evidence, used to show that a person "acted in accordance with the character," unless this evidence is admissible for a proper purpose under rule 404(b)(2) or as res

gestae evidence.  Fed. R. Evid. 404(b).  Relevant evidence that is not character evidence or evidence of another crime or act is admissible, however, unless rule 403 requires that the court exclude the evidence.

The Court determines that evidence of J. Ramirez' prescription medication and that this medication is at one of the crime scenes is not either character evidence or other act evidence such that it requires analysis under rule 404(b)(2) or res gestae to be admissible.  This conclusion is because the fact that Ramirez is prescribed medication and that this medication is at a crime scene is not evidence of an act or wrong that Ramirez undertakes.   It is not an action that can impermissibly reflect on Ramirez' character.  The Court, therefore, asks instead only whether this evidence is relevant under rule 401 such that it is admissible.

Rule 401 requires that evidence be related to a fact of consequence to be admissible.  <u>See</u> Fed. R. Evid. 401.  This rule requires that the fact be related to an "issue that is necessary to a verdict," and that the evidence tends to make this fact more or less probable than it would be in the absence of the evidence.  <u>United States v. Jordan</u>, 485 F.3d at 1218.  <u>See</u> Fed. R. Evid. 401.  Here, the evidence that J. Ramirez' prescription medication is at one of the crime scenes goes towards proving that J. Ramirez is present during the kidnapping, and therefore one of the offenders.  J. Ramirez' identity as the kidnapper is a fact of consequence, because, in the absence of finding that J. Ramirez is the kidnapper, the jury cannot return a verdict of guilty.  The Court also determines that this evidence tends to make the fact that J. Ramirez is the kidnapper more probable, because the fact that his medication is at one of the crime scenes makes it more likely that J. Ramirez is at the crime scene when the crime occurs, and is therefore a participant in the kidnapping.  The Court therefore determines that this evidence is relevant.

Further, the Court determines that rule 403 does not require the exclusion of this evidence.

- 47 -

Rule 403 requires the exclusion of otherwise relevant evidence only when the evidence's "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The court should not exclude, however, evidence solely because it favors the prosecution, because "evidence favorable to the prosecution is always prejudicial to a criminal defendant." United States v. Bauer, 759 F. Supp. 3d 1184, 1189 (D.N.M. 2024)(Johnson, Chief J.). Instead, the court should only exclude evidence under rule 403 as unfairly prejudicial if the evidence tends to unfairly influence the jury against the defendant separate and apart from the jury's judgment of the defendant's guilt or innocence of the crime charged. See United States v. Rodriguez, 192 F.3d at 951. Although this evidence is in some way prejudicial to J. Ramirez, because it favors the prosecution, the Court concludes that it does not rise to the level of substantial prejudice such that the prejudice outweighs the probative value. This conclusion is because the fact of J. Ramirez' prescription and its discovery at one of the crime scenes will not tend to influence adversely the jury separate and apart from the jury's consideration of J. Ramirez' guilt or innocence. The Court, therefore, concludes that it should not exclude evidence of J. Ramirez' prescription and its discovery at one of the crime scenes under rule 403, and that this evidence is otherwise admissible as relevant.

## IV. EVIDENCE OF A VOICEMAIL THAT J. RAMIREZ LEAVES WELLS IS ADMISSIBLE, BUT EVIDENCE THAT J. RAMIREZ IS ON PAROLE, OR THAT THE VOICEMAIL IS LEFT FOR J. RAMIREZ' PAROLE OFFICER, IS NOT ADMISSIBLE.

The United States contends that evidence of a voicemail that J. Ramirez leaves for Wells, his parole officer, in which J. Ramirez states his location as well as mentions his curfew, and the telephone number from which he is calling, is first admissible as proper non-hearsay evidence under rule 801(d)(2) -- an admission by a party opponent. See Notice II at 7. Beyond that basis of

admissibility, the United States argues that the Court should admit this evidence as res gestae evidence.  See Notice II at 7.  In the alternative, the United States contends that this evidence is properly admissible under rule 404(b).  See Notice II at 11.  The Court agrees with the United States that this evidence is admissible as non-hearsay under rule 801(d)(2), because J. Ramirez makes the voicemail is made by J. Ramirez, and the United States offers the voicemail into evidence.  The Court concludes, however, that compliance with rule 801(d)(2) is necessary but not sufficient to admit evidence of J. Ramirez' voicemail while on parole, because this evidence constitutes an act by J. Ramirez that could be subject to exclusion under rule 404(b).  The Court, therefore, continues its analysis of the admissibility of this evidence with the rule 404(b) argument, before turning to an analysis of whether the evidence can be admitted as res gestae evidence.  On these questions, the Court concludes that evidence of the voicemail that J. Ramirez leaves for Wells, including the location that J. Ramirez mentions on the telephone call, and the telephone number from which J. Ramirez calls, is admissible as proper rule 404(b) evidence.  The Court concludes that the United States does not seek to use this evidence for an improper propensity purpose, that is, it is not to show J. Ramirez' character and his conformity therewith.  Instead, this evidence has a proper purpose -- to show both J. Ramirez' identity as the kidnapper and J. Ramirez' opportunity to commit an act that constitutes part of the crime.  Moreover, the Court agrees with the United States' contention that the evidence is admissible as res gestae, because the evidence provides the charged crimes' context, i.e., it is "entirely germane background information, which is 'directly connected to the factual circumstances of the crime.'"  United States v. Irving, 665 F.3d at 1213 (quoting United States v. Parker, 553 F.3d at 1314).  The United States may not admit, however, evidence that the voicemail is made to J. Ramirez' parole officer, the fact that J. Ramirez is on parole at the time of the telephone call, or the portion of the voicemail where J. Ramirez

references the fact of his curfew.  The Court concludes that this evidence is substantially more prejudicial than probative, and the Court therefore excludes  these details under rule 403.

### A.    THE VOICEMAIL IS PROPER NON-HEARSAY EVIDENCE UNDER RULE 801(d)(2).

"Hearsay testimony is generally inadmissible." United States v. Christy, No. CR 10-1534 JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802). Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). There are, however, certain out-of-court statements that the Federal Rules of Evidence denote as non-hearsay, including statements by a party opponent under rule 801(d)(2).  Rule 801(d)(2)(A) states: "A statement is not hearsay, even if offered for its truth, if it is offered against an opposing party and it: (A) was made by the party in an individual or representative capacity . . . ." Fed. R. Evid. 801(d)(2)(A).

The voicemail that the United States seeks to admit consists of only statements that J. Ramirez makes in his individual capacity, and he is a party opponent to the United States in this case.  Because the United States seeks to admit this evidence against J. Ramirez, the Court therefore concludes that the voicemail is a party opponent's proper admission, and the Court will not exclude the voicemail on the basis of hearsay evidence.  The fact, however, that the rule of hearsay does not bar this evidence from admission does not make the evidence automatically admissible.  This evidence, a voicemail that J. Ramirez leaves while on parole, constitutes other act evidence which must be offered either for a proper purpose under rule 404(b) or proper res gestate evidence to be admissible.  The Court discusses these alternative bases for admissibility below.

## B. RULE 404(B) DOES NOT PROHIBIT EVIDENCE OF THE VOICEMAIL THAT J. RAMIREZ LEAVES FOR WELLS.

Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts if admitted to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). The rule does not prohibit, however, the admissibility of other acts evidence if this evidence is admissible for another purpose, including for "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The United States contends that it offers evidence of J. Ramirez' voicemail to Wells for a proper purpose: to show J. Ramirez' identity as the kidnapper and to show that J. Ramirez has the opportunity to carry out the kidnapping. See Notice II at 11. The United States argues that the evidence of J. Ramirez' voicemail and the telephone number from which he calls goes towards proving identity, both because "the similarities between the voice on the voicemail and the voice on the ransom call are noticeable," and because J. Ramirez "used the same phone number to call his supervising officer on the evening of July 23 that the ransom caller used on the morning of July 26." Notice II at 11. Additionally, the United States contends that J. Ramirez' voicemail also goes towards opportunity, because J. Ramirez calls from the same area where Doe is later dropped off after the commission of the kidnapping, evidencing a familiarity with the area. See Notice II at 11. The Court concludes that the purpose for which the United States intends to offer this evidence -- identity and opportunity -- is proper under rule 404(b).

Even if the proponent offers evidence for a proper rule 404(b) purpose, however, evidence must still be relevant to be admissible. The threshold for a finding of relevancy is very low. Evidence needs to have a tendency only to make the existence of any fact that is of consequence -- that is, related to an issue that is necessary to a verdict -- to the determination of the action more

probable or less probable than it is without the evidence.  See Fed. R. Evid. 401.  The Court determines that the evidence of J. Ramirez' voicemail which he leaves for his parole officer, in which he states that he is at an address, is relevant.  Both evidence of J. Ramirez' voice on the voicemail, which the jury can compare to the kidnapper's voice on a ransom call, and the fact that J. Ramirez leaves the voicemail using the same telephone number from which the ransom calls are made, make it more probable that J. Ramirez is one of the kidnappers.  Additionally, the fact that J. Ramirez indicates in the voicemail that he is in the same area where Doe is released after the kidnapping also tends to make it more probable that J. Ramirez is the kidnapper, because he is familiar with the area where Doe is released. The identity of the kidnapper is a fact of consequence, because the jury cannot convict J. Ramirez of kidnapping without identifying him as the kidnapper. Therefore, the Court concludes that this evidence is relevant.

The Court still may keep out relevant evidence under rule 403, however, if the probative value of the evidence is "substantially outweighed" by "a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  The Court concludes that the evidence of the voicemail that J. Ramirez leaves for Wells, in which he identifies his location, and the telephone number from which J. Ramirez calls, has high probative value, because it provides a voice sample for the jury to compare J. Ramirez' voice against the kidnapper's voice in the ransom call, and because it potentially connects J. Ramirez to the kidnapping both by showing that J. Ramirez has access to the telephone number that makes the ransom calls and because it demonstrates J. Ramirez' familiarity with the area where Doe is later dropped off after the kidnapping's conclusion.  The Court also concludes that the prejudice to J. Ramirez which results from this evidence is not prejudicial to an unfair degree.  See United States v. Archuleta, 737 F.3d 1287,

1293 (10th Cir. 2013)("Virtually all relevant evidence is prejudicial to one side or the other."). This conclusion does not apply to the additional information that the United States wishes to present, that J. Ramirez is on parole at the time of the call, that J. Ramirez leaves the voicemail for J. Ramirez' parole officer, and that J. Ramirez indicates on the voicemail that he will be late for his curfew, because the risk of undue prejudice substantially outweighs the information's probative value. That J. Ramirez is on parole at the time of the voicemail call does not advance significantly the purpose for which the United States seeks to admit it, namely, providing a voice comparison between J. Ramirez and the ransom caller, and establishing J. Ramirez' connections to the ransom call's telephone number and the area where Doe is released after the kidnapping. Additionally, there is a likelihood that a juror will use the fact of J. Ramirez' parolee status for an impermissible rule 404(b) purpose. A juror can assume that, because J. Ramirez has been involved in criminal activity in the past, that J. Ramirez is therefore more likely to engage in further criminal activity and commit the kidnapping of Doe. Introducing the fact of J. Ramirez's arrest likely will "tend[] to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." United States v. Otuounye, 995 F.3d at 1207 (quoting United States v. Meritt, 961 F.3d at 1115)(emphasis in United States v. Otuounye and United States v. Meritt). The Court therefore concludes that, given rule 404(b)'s restrictions, evidence of J. Ramirez' voicemail that J. Ramirez leaves for Wells, in which J. Ramirez identifies his location, and evidence of the telephone number from which he is calling, is admissible, but the United States cannot admit evidence of J. Ramirez' parolee status or the portion of the voicemail where J. Ramirez discusses his curfew. The Court allows, with the consent of J. Ramirez, J. Ramirez' parole officer Wells to testify to this information, but does not allow Wells to identify herself as a parole officer. See Scheduling Conference Tr. at 9: 2-4 (Robert).

C.    EVIDENCE OF THE VOICEMAIL THAT J. RAMIREZ LEAVES FOR WELLS IS ADMISSIBLE AS RES GESTAE.

Having concluded that the evidence is admissible pursuant to rule 404(b), the Court now considers whether, in the alternative, the evidence is admissible as res gestae.  Res gestae evidence is evidence that "provides the context for the crime, 'is necessary to the presentation of the case,' or is 'appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae.'" United States v. Kimball, 73 F.3d at 272 (quoting United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980)).  In the Tenth Circuit, res gestae evidence is intrinsic evidence which is not subject to rule 404(b) restrictions.  See United States v. Ford, 613 F.3d at 1267.  Res gestae evidence is still subject, however, to rule 403's balancing test -- meaning that the Court may exclude the res gestae evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.  See also United States v. Irving, 665 F.3d at 1212; Fed. R. Evid. 403.

In Notice II, the United States argues that evidence of the voicemail that J. Ramirez leaves for Wells, which comes from the telephone number (505) 582-4555, and in which J. Ramirez identifies that he is at Rio Bravo and Second, and will be late for curfew, is proper res gestae evidence.  See Notice II at 7.  The United States argues that this evidence provides important context for the crime, because it demonstrates J. Ramirez' familiarity with the area where Doe is left after the kidnapping, links J. Ramirez' telephone number to the ransom calls, and provides a neutral context for the jury to hear J. Ramirez' voice, and therefore is proper res gestae evidence. See Notice II at 7.  The Court agrees with the United States and concludes that this evidence is proper res gestae evidence.  One category of intrinsic evidence is evidence that provides "direct proof of the defendant's involvement with the charged crimes." United States v. Kupfer, 797 F.3d at 1238 (citing United States v. Parker, 553 F.3d at 1314-15).  The Court concludes that this

evidence provides such direct proof; the evidence that J. Ramirez' has access to and uses for personal calls the same telephone number that later is used to make the ransom calls, and that evidence that J. Ramirez is familiar with the area where Doe later is left after the kidnapping's completion, gives the jury evidence of J. Ramirez' connection to the crime charged. Accordingly, the Court determines that res gestae is a proper basis for the admissibility of this evidence.

Proper res gestae evidence remains subject, however, to rule 403 balancing. See United States v. Piette, 45 F.4th at 1155. Rule 403 counsels that the court should exclude relevant evidence only if "its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403. As discussed above, infra section IV(B), in conjunction with the discussion of the admissibility of this evidence under rule 404(b), the Court determines that evidence of the voicemail that J. Ramirez leaves for Wells, including the telephone number from which J. Ramirez calls and the portion where J. Ramirez identifies his current location, is not substantially more prejudicial than probative, and therefore the Court will admit this evidence. The Court concludes that J. Ramirez' parolee status, and the portion of the voicemail where J. Ramirez discusses his curfew, however, is unfairly prejudicial to J. Ramirez such that the Court will exclude these details under rule 403.

## V.   EVIDENCE THAT J. RAMIREZ MUST WEAR AN ANKLE MONITOR, THAT J. RAMIREZ CUTS OFF HIS ANKLE MONITOR AND IS DEEMED AN ABSCONDER WITH A STATE WARRANT ISSUED FOR HIS ARREST, AND THAT J. RAMIREZ IS BEING MONITORED IS NOT ADMISSIBLE.

In Notice II, the United States argues that evidence that J. Ramirez is under State parole supervision during the commission of the kidnapping and that J. Ramirez cuts off his ankle monitor hours before the kidnapping is admissible both as proper rule 404(b) evidence and as proper res gestae evidence. See Notice II at 4. The United States argues that this evidence is proper rule 404(b) evidence, because the fact that J. Ramirez' "final act leading up to the kidnapping was to

cut off his ankle monitor at home . . . ." is "critical evidence of opportunity, intent, preparation and plan." Notice II at 10. The United States separately argues that this evidence is proper res gestae evidence because the evidence of J. Ramirez' ankle monitor and the State's monitoring is "inextricably intertwined with the charged offenses." Notice II at 6. The United States argues that it "cannot cohesively explain the events without presenting evidence that [J. Ramirez] cut off his ankle monitor just hours before the kidnapping." Notice II at 6. While this evidence is rule 404(b) or res gestae evidence, the Court determines that the Court should keep out this evidence under rule 403.

Rule 403 requires the Court to exclude otherwise admissible evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403. The Court acknowledges that this evidence has probative value; the fact that J. Ramirez cuts off his ankle monitor several hours before the kidnapping tends to make the fact that J. Ramirez is the kidnapper more likely than in the absence of this evidence. The Court concludes, however, that the danger of unfair prejudice to J. Ramirez outweighs the evidence's probative value. The Court determines that there is a likelihood that evidence of J. Ramirez' parolee status, ankle monitor, and the State's active monitoring "tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." United States v. Otuonye, 995 F.3d at 1207 (quoting United States v. Meritt, 961 F.3d at 1115)(emphasis in United States v. Otuonye and United States v. Meritt). This conclusion is sound, because the Court determines that there is a likelihood that a juror will use this information for an impermissible rule 404(b) purpose; specifically, a juror may assume that, because J. Ramirez has committed such crime in the past that requires the State to make J. Ramirez wear an ankle monitor and to be subject to the State's monitoring, he is more likely to engage in criminal activity and

therefore commit the kidnapping with which the United States charges him. Accordingly, the Court excludes evidence of J. Ramirez' status as a parolee, ankle monitor, and the State's monitoring, under rule 403.

IT IS ORDERED that: (i) the requests in the United States' Notice of Intent to Introduce Evidence as *Res Gestae* and/or Prior Bad Acts Pursuant to Federal Rule of Evidence 404(b), filed June 19, 2025 (Doc. 199) are granted in part and denied in part; (ii) the requests in the United States' Second Notice of Intent to Introduce *Res Gestae* Evidence, or, in the Alternative, Pursuant to Federal Rule of Evidence 404(b), filed July 11, 2025 (Doc. 232) are granted in part and denied in part; (iii) evidence of the 2017 encounter between Defendant Jose Ramirez and the Valencia County Sheriff's Department in a car that co-Defendant Megan Bicondova is driving is admissible, but the arrest that stems from this 2017 encounter is not admissible; (iv) evidence of J. Ramirez' firing in 2013 from a business that John Doe owns and operates is admissible, but the motivation behind the firing is not admissible; (v) evidence of J. Ramirez' prescription medications which are at one of the crime scenes is admissible, but the fact that Southern New Mexico Correctional Facility releases J. Ramirez is released from Southern New Mexico on July 2, 2018, and the fact that Southern New Mexico Correctional Facility prescribes the prescriptions to J. Ramirez is not admissible; (vi) evidence of a voicemail that J. Ramirez leaves Rebekah Wells, J. Ramirez' New Mexico Probation and Parole Officer, in which he states he is at a bus station at the intersection of Rio Bravo and Second St. in Albuquerque, New Mexico, and the telephone number from which J. Ramirez calls is admissible, but evidence that J. Ramirez is on parole, that he is speaking in the voicemail to a parole officer, and that he has a curfew is not admissible; (vii) evidence that J. Ramirez must wear an ankle monitor, that J. Ramirez cuts off the ankle monitor and is deemed an absconder with a State warrant issued for his arrest, and that the State is monitoring J. Ramirez is

not admissible.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Ryan Ellison
   Acting United States Attorney
Jack Burkhead
Sarah Mease
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiffs*

Nicole Moss
The Law Office of Nicole W Moss LLC
Albuquerque, New Mexico

--and--

Marc H. Robert
Marc H. Robert, Attorney
Albuquerque, New Mexico

   *Attorneys for the Defendant*